**LIMONEIRA COMPANY, a California corporation, Roger Donlon, Paul B. Kersten, and E. B. Antonell, et al., Plaintiffs,**

**v.**

**W. Willard WIRTZ and Robert C. Goodwin, Defendants.**

**Civ. No. 2820–SD–K.**

United States District Court
S. D. California, S. D.

May 29, 1963.

McDaniel & McDaniel, by Leon L. Gordon, Los Angeles, Cal., for plaintiffs.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section, Gordon P. Levy, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

KUNZEL, District Judge.

The questions to be decided on defendants' motion for summary judgment are:

1. Whether there is any basis for plaintiffs' claim that the Secretary of Labor exceeded his statutory authority in fixing a minimum wage rate to be paid Mexican agricultural workers, hereinafter referred to as "braceros", by orders of March 29, 1962 and October 19, 1962, and

2. Whether there is any substance to plaintiffs' claim that Section 503 of the Agricultural Workers Importation Act as amended, 7 U.S.C.A. § 1463, is unconstitutional, necessitating the convening of a three-judge court pursuant to 28 U.S.C.A. § 2282.

As to the claim of unconstitutionality, plaintiffs allege in their complaint that Section 503 of the Act is unconstitutional in that it constitutes an unlawful delegation of legislative power and fails to set forth adequate standards in violation of Article I, Sections 1 and 8 of the Constitution. Plaintiffs conceded in their argument that if the Secretary confined his findings of "adverse ef-

fect" based upon prevailing wages rather than upon minimum wages, there could be no claim of unconstitutionality. Inasmuch as it is found that there are no grounds for distinction, there can likewise be no claim of unconstitutionality. Over the fourteen-year period of the existence of the Act, no claim of unconstitutionality has been made in any of the reported cases where the Act has been the subject of litigation. This case falls within the purview of such cases as Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), and United States v. Rock Royal Co-op., Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939), rather than Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). In view of the holding that there is no substantial constitutional question, it is not necessary to convene a three-judge court. Wicks v. Southern Pacific Co., 231 F.2d 130 (9th Cir. 1956), cert. denied Wicks v. Brotherhood of Maintenance of Way Emp. Southern Pac. Co., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (1956).

Section 503 of the Act, 7 U.S.C.A. § 1463, provides as follows:

"No workers recruited under this subchapter shall be available for employment in any area unless the Secretary of Labor has determined and certified that (1) sufficient domestic workers who are able, willing, and qualified are not available at the time and place needed to perform the work for which such workers are to be employed, (2) the employment of such workers will not adversely affect the wages and working conditions of domestic agricultural workers similarly employed, and (3) reasonable efforts have been made to attract domestic workers for such employment at wages, standard hours of work, and working conditions comparable to those offered to foreign workers. In carrying out the provisions of (1) and (2) of this section, provision shall be made for consultation with agricultural employers and workers for the purpose of obtaining facts relevant to the supply of domestic farm workers and the wages paid such workers engaged in similar employment. Information with respect to certifications under (1) and (2) shall be posted in the appropriate local public employment offices and such other public places as the Secretary may require."

Section 501 of the Act, 7 U.S.C.A. § 1461, provides in part as follows:

"For the purpose of assisting in such production of agricultural commodities and products as the Secretary of Agriculture deems necessary, by supplying agricultural workers from the Republic of Mexico (pursuant to arrangements between the United States and the Republic of Mexico or after every practicable effort has been made by the United States to negotiate and reach agreement on such agreements), the Secretary of Labor is authorized—."

Pursuant to the Act, the Governments of Mexico and the United States entered into a Migrant Labor Agreement in 1951 which was subsequently amended on several occasions. Article 9(a) and Article 15(a) of the Agreement provides as follows:

"Article 9 PREFERENCE IN EMPLOYMENT FOR UNITED STATES WORKERS

"a) Mexican workers shall not be employed in the United States in any jobs for which domestic workers can be reasonably obtained, or by an employer who is not giving preference in employment to United States domestic workers, or where the Secretary of Labor cannot determine and certify that the employment of Mexican workers would not adversely affect the wages, working conditions and employment opportunities

of domestic agricultural workers in the United States."

"Article 15 WAGES

"a) The employer shall pay the Mexican worker not less than the prevailing wage rate paid to domestic workers for similar work at the time the work is performed and in the manner paid within the area of employment, or at the rate specified in the individual work contract which shall be the rate determined by the Secretary of Labor as being necessary to permit him to certify in accordance with the provisions of Article 9(a) of the Agreement, whichever is higher. The determination of the prevailing wage rate will also be made by the Secretary of Labor. The employer and the Mexican worker shall be bound by the Secretary of Labor's determination of the wage rate required to be paid under this Article, and such determination shall be final and conclusive."

Plaintiffs state in their memorandum that from 1949 until 1961 the Department of Labor construed "adverse effect" as being measured with reference to the prevailing wage, and that no "adverse effect" was considered to be threatened if "braceros" were paid not less than the prevailing wage rate for domestic agricultural workers similarly employed. Plaintiffs contend that this practice by the Secretary for a period of twelve years, with Congressional approval indicated by the reenactment of the Act at two-year intervals, established the standard that the Secretary is bound to use. They also contend that the 1955 Amendment to Section 503 supports this basis.[1] However, plaintiffs do not claim that the wage rates of which they complain are unreasonable.

The action of the Secretary in fixing minimum wages has been the subject of litigation and considerable debate in Congress. Also, there has been much criticism of the Secretary's action in this regard, both in and out of Congress. See Johnson v. Kirkland, 290 F.2d 440 (5th Cir. 1961), cert. denied, 368 U.S. 889, 82 S.Ct. 142, 7 L.Ed.2d 88 (1961); Rio Hondo Harvesting Ass'n. v. Johnson, 290 F.2d 471 (5th Cir. 1961); Congressional Record 1961, pages 17738–17746; 1961 U.S.Code Cong. and Adm.News, pages 3097–3107.

The Kirkland case, supra, reveals that the Secretary of Labor, in 1958, 1959, and 1960 set minimum piece-work wages to be paid "braceros". At page 443 of 290 F.2d, in regard to the 1958 order, the court commented as follows:

"During the 1958 season, the Labor Department apparently followed a plan of voluntary compliance, but required a fixed minimum piece rate for specific commodities for those not complying. After numerous protests from American employers and prolonged conferences with the Department of which Congress had cognizance, this plan was renewed for 1959 but with the minimum piece rate for cotton now being raised to $2.30. Addendums to the Standard Work Contract were required of these not demonstrating compliance and violators were informed that they would not be approved for employment."

In Kirkland, the District Court had granted a preliminary injunction against certain agents of the Department of Labor, enjoining the enforcement of a minimum wage order. The Court of Appeals discussed the arguments of each of the parties as to whether the minimum wage order was issued in excess of the authority of the Secretary. However, the Court declined to pass upon this aspect of the case, holding that the Secretary

---

[1] "In carrying out the provisions of (1) and (2) of this section, provision shall be made for consultation with agricultural employers and workers for the purpose of obtaining facts relevant to the supply of domestic farm workers and the wages paid such workers engaged in similar employment. Information with respect to certifications under (1) and (2) shall be posted in the appropriate local public employment offices and such other public places as the Secretary may require."

of Labor was an indispensable party and that, therefore, the preliminary injunction was improperly issued.

In the Rio Hondo case, supra, the local representatives of the Director of the Bureau of Employment Security of the Department of Labor had revoked the plaintiff's authority to employ "braceros" for failing to comply with the minimum wage schedule fixed by the Secretary of Labor. Plaintiff sought to enjoin certain agents of the Director from enforcing the revocation. The District Court dismissed for the reason that the plaintiff failed to join the Director as an indispensable party, and the Court of Appeals affirmed without reaching plaintiff's principal contention that the Secretary of Labor had exceeded his authority in issuing a minimum wage order. This case was before a different panel than the Kirkland case. The same result was reached in McBride Farms Marketing Ass'n v. Johnson, 290 F.2d 474 (5th Cir. 1961).

Speaking of the Rio Hondo and McBride cases and the minimum wage order, the Court, in Kirkland, states in a footnote at page 443 of 290 F.2d:

> "If in the instant case we were to hold the 90/10 policy invalid, this would cut the ground out from under those adverse administrative determinations."

In Dona Ana County Farm & Livestock Bureau v. Goldberg, 200 F.Supp. 210 (D.D.C.1961), the plaintiffs sued to enjoin the Secretary of Labor from using a prevailing wage rate set by him in certain counties in New Mexico, alleging that the Secretary had used improper standards. The Court granted the Secretary's motion for a summary judgment, and at page 214 of 200 F.Supp. stated as follows:

> "As both parties appear to agree, the Secretary of Labor is not authorized directly to fix wages under the Agricultural Act, but is only empowered to determine the actual prevailing wages paid to domestic workers in the area of employment which must be paid to Mexican National farm workers performing the same activity in the same area of employment. However, since the determination of the Secretary of Labor was also aimed at ascertaining whether the employment of Mexican Nationals in the user areas here in question was adversely affecting the wages and working conditions of domestic workers, the Secretary's determination may certainly indirectly fix wages. Whether Congress anticipated this possible effect of the Secretary of Labor's certification and determination is open to speculation, but in view of the broad powers given the Secretary by Congress it is not speculative that harsh effects may result from such certifications and determinations made by the Secretary operating within the broad discretion given him."

The Congressional debate in 1961 (Congressional Record, supra) over a proposed amendment, discloses that prior to the extension of the Act by Congress, to December 31, 1963, Congress was aware of the fact that the Secretary was using the minimum wage criteria, and some members approved, and some disapproved.

It is extremely difficult to follow plaintiffs' argument that the Secretary can say that unless the "braceros" are paid the prevailing wage their employment will adversely affect the domestic workers, but the Secretary cannot say that unless a certain wage, which is concededly reasonable, is paid the "braceros", the domestic worker would be adversely affected. True, the latter basis might have the indirect effect of fixing wages for domestic workers in areas where "braceros" are employed, but certainly the employment or threatened employment of "braceros" might well cause a depressant effect upon prevailing wages and, thus, an "adverse effect." The "adverse effect" is what the statute is designed to prevent, and the fixing of a minimum wage rate would appear to be a much more effective means of prevent-

ing an "adverse effect" than using the prevailing wage rate as a criteria.

Furthermore, if it were held that the Secretary did not have the authority to fix a minimum wage, the Migrant Labor Agreement, which provides for the fixing of a wage rate to be paid the "braceros", would become a nullity. This result should certainly be avoided if possible.

In accordance with the foregoing, defendants' motion for summary judgment is granted, and this memorandum of decision shall constitute the findings of fact and conclusions of law. Counsel for defendants shall prepare, serve, and lodge a judgment in accordance herewith.