**MOBIL OIL CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent,**

**Associated Gas Distributors, Intervenor.**

**MOBIL OIL CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**Nos. 71–1260, 71–1261 and 71–1721.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 1972.

Decided Oct. 6, 1972.

Rehearing Denied Nov. 14, 1972.

Mr. Carroll L. Gilliam, Washington, D. C., with whom Messrs. Tom P. Hamill, Houston, Tex., and Philip R. Ehrenkranz, Washington, D. C, were on the brief, for petitioner.

Mr. Leo E. Forquer, Sol., F. P. C., with whom Messrs. Gordon Gooch, Gen. Counsel, and J. Richard Tiano, First Asst. Sol., F. P. C., were on the brief, for respondent.

Messrs. John E. Holtzinger, Jr., and Frederick Moring, Washington, D. C., were on the brief for intervenor in No. 71–1260.

Before MacKINNON and ROBB, Circuit Judges, and RONALD N. DAVIES,* Senior District Judge for the District of North Dakota.

ROBB, Circuit Judge:

These consolidated cases come to us under section 19(b) of the Natural Gas

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

Act, 15 U.S.C. § 717r(b) (1970). The controversy had its origin in the Commission's area rate proceedings in the Southern Louisiana Area.[1] Petitioner Mobil Oil Corporation, an independent producer in that area, sells natural gas to interstate pipeline transmission companies under contracts for terms of twenty years or more. The sales are subject to Federal Power Commission jurisdiction and rate regulatory authority. 15 U.S.C. § 717(c).

Mobil seeks review of a series of Commission orders prescribing rate levels in the Southern Louisiana Area. The effect of these orders is to deny to Mobil rate increases above a certain level. Mobil challenges the orders on the grounds that the rates established are (1) unduly preferential and discriminatory, (2) unsupported by evidence in the record or sufficient grounds stated by the Commission, and (3) unaccompanied by adequate procedural safeguards such as a hearing or the taking of evidence. In Nos. 71–1260 and 71–1261 the Associated Gas Distributors have intervened on the side of the Commission seeking affirmance. For the reasons stated below we affirm.

Prior to 1954, the Commission declined to regulate sales of natural gas by independent producers to interstate pipelines. In 1954 the Supreme Court held that independent producers are "natural gas companies" within the meaning of that term as defined in the Natural Gas Act, 15 U.S.C. § 717 et seq. Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). In the succeeding six years the Commission ". . . labored with obvious difficulty to regulate a diverse and growing industry under the terms of an ill-suited statute . . ." which was thought to require the establishment of just and reasonable rates through an examination of each individual producer's costs of service. Permian Basin Area Rate Cases, 390 U.S. 747, 756, 88 S.Ct. 1344, 20

L.Ed.2d 312 (1968). "[T]he number both of independent producers and of jurisdictional sales [was] large, and the administrative burdens placed upon the Commission by an individual company costs-of-service standard were therefore extremely heavy." 390 U.S. at 757, 88 S.Ct. at 1355 (footnotes omitted).

In response to this heavy administrative burden the Commission on September 28, 1960 established rate standards or "guidelines" for independent producers of natural gas in the Southern Louisiana Area. The Commission stated that these standards were intended to serve as a guide in determining whether proposed rate changes should be accepted or suspended. Statement of General Policy No. 61–1, 24 F.P.C. 818 (1960). The guidelines were to remain in effect until the completion of area rate proceedings then in progress. Thus, between September 28, 1960 and September 25, 1968, the date on which the final area rates (effective October 1, 1968) were established by the Commission, if a rate filing were made by a producer at a level above the guideline rates, the increased rate would be suspended by the Commission under section 4(e) of the Act, 15 U.S.C. § 717c(e). At the expiration of the suspension period the increased amounts would be collected by the producer subject to refund under terms and conditions which would be set at the time area rate ceilings were established.

On March 30, 1964 Mobil, rather than collect rates above the guideline levels subject to refund, filed a company-wide rate settlement proposal with the Commission. Mobil's proposed settlement, which the Commission approved on May 6, 1964, established rates, with minor exceptions, at levels equal to or less than the applicable area guidelines then in effect, and provided that Mobil would refund amounts previously collected in excess of settlement rates and waive its rights to file for contractually autho-

---

1. This is one of the regions designated by the Federal Power Commission for area

rate purposes. *See* S.L.A. Rate Proceeding, 25 F.P.C. 942 (1961).

rized increased rates until January 1, 1967.[2] Socony Mobil Oil Co., Inc., 31 F. P.C. 1101, 1101–1102 (1964).

On September 25, 1968 the Commission completed the Southern Louisiana Area Rate Proceedings and issued Opinion No. 546, 40 F.P.C. 530 (1968), which prohibited increased rate filings in the Southern Louisiana Area above the ceilings set on that date. These ceilings were to become effective on October 1, 1968 and extend to 1974 for one class of sales and indefinitely for another class.

Mobil did not file for increased rates between January 1, 1967 (the date when its waiver of increases expired) and September 25, 1968; and by Opinion No. 546 Mobil was thereafter prohibited from filing for increases in the Southern Louisiana Area above the new ceilings. The opinion ordered the reduction of rates established by producers between 1960 and 1968 above the new ceilings and the refund of amounts collected in excess of the ceilings. Opinion No. 546, 40 F.P.C. 530 (1968); Opinion No. 546–A, 41 F.P.C. 301, 340–42 (1969).

By Opinion 546–A issued March 20, 1969, the Commission modified the moratorium on rate increases which was established in Opinion No. 546. 41 F.P.C. 301 (1969). The modifications are not material to this case. Concurrently with the issuance of Opinion 546–A the Commission began a new area rate proceeding for the Southern Louisiana Area, 41 F.P.C. 378 (1969). This proceeding initially involved only one type of offshore sales, but on December 15, 1969 it was enlarged to encompass sales of all vintages of gas produced in the entire Southern Louisiana Area. 42 F.P.C. 1110 (1969). The proceeding was styled Docket No. AR69–1, and was consolidated with the reopening of Docket Nos. AR61–2 et al., in which opinions 546 and 546–A had been issued.

During this period judicial review of Opinions 546 and 546–A was taking place in the United States Court of Appeals for the Fifth Circuit. Pending completion of the court's review, Commission orders requiring the reduction in rates above the ceilings established in Opinions 546 and 546–A and refunds of charges in excess of those ceilings were stayed. The moratorium on new filings of rates above the ceilings set by Opinions 546 and 546–A was not stayed. On March 19, 1970 the United States Court of Appeals for the Fifth Circuit affirmed the Commission's Opinions 546 and 546–A, stated that the Commission had full authority to modify or set aside its action in those cases, and reserved to the Commission the disposition of the stay entered during the course of judicial review. Southern Louisiana Area Rate Cases v. FPC, 428 F.2d 407 (5th Cir. 1970). Certiorari was denied by the Supreme Court on December 7, 1970. Public Service Commission of New York v. Amerada Hess Corp., 400 U.S. 950, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970).

On July 30, 1970, in Docket No. R–394, the Commission issued a Notice of Proposed Rule Making. 35 Fed.Reg. 12559. The Notice stated that the Commission proposed to terminate the moratorium established by Opinions 546 and 546–A. All interested persons were invited to submit data, views, comments and suggestions concerning the proposed termination. In response, comments were filed by a number of independent producers and pipeline purchasers operating in Southern Louisiana, including Mobil, by the Independent Natural Gas Association of America, by Associated Gas Distributors (AGD), by the Municipal Distributors Group (MDG) and by the Wisconsin Public Service Commission (Wisconsin). All the producers and pipelines favored the lifting of the moratorium. In its comments Mobil stated in part:

> Mobil supports the termination of the moratoria imposed by Opinion

2. In the case of certain Southern Louisiana Area sales for which rate increases were contractually authorized, Mobil waived its right to file for increases until April 1, 1969.

Nos. 546 and 546–A. Such proposed termination evidences the Commission's concern with the limitations upon the level of exploration and production imposed by the ultimately circular cost-based rates of Opinion Nos. 546 and 546–A. Lifting of the moratoria on rate filings is a necessary step in correcting the errors of the past, but constitutes only the first step toward an ultimate solution in meeting the shortages in supply now overwhelmingly evidenced on records before the Commission in Docket Nos. AR69–1, et al., and Rulemaking Docket No. R–389A.

Based upon such substantial evidence and on the Joint Comments filed herein, the Commission will have an adequate record to support a waiver or lifting of the moratoria. (J.A. 43, 44).

MDG, AGD and Wisconsin opposed the proposed action. MDG and Wisconsin contended that the moratorium should not be lifted on the basis of data which had not been tested in an evidentiary hearing.

Upon the basis of the record in Docket No. R–394 the Commission on October 27, 1970 issued Opinion No. 413, lifting the moratorium. The Commission stated that the reasons for its action were that:

In the July 30 notice we noted that there are positive indications of a worsening supply situation with new findings of gas falling below production in two successive years, that there are also indications of a sharp drop in the level of gas exploration during 1968 and 1969 which has an adverse impact on future gas supplies, and finally that there are indications of cost increases which have affected the amount of funds devoted to the industry's exploratory effort. In view of these changed circumstances, we believe it important to lift the morato-

rium promptly. It is neither necessary nor desirable in this particular type of situation to await the results of an evidentiary hearing before taking positive action. Rate increases will continue to be collected subject to refund. Nor is there adequate justification for imposing any additional limitation on the level to which producers may file, aside from contract limitations inherent in the various producer contracts. (J.A. 48, 49).

The lifting of the moratorium established by Opinions 546 and 546–A permitted all producers to file for rate increases subject only to contractual limitations. All rate filings made within 30 days of October 27, 1970 were to be automatically suspended for a period of 75 days from October 27, that is, until January 10, 1971, at which time they would become effective, subject to refund.[3] Each rate filing was to be treated individually by the Commission under section 4 of the Act, and the reasonableness of a rate under the Act was subject to Commission decision after an evidentiary hearing required by section 4. In essence the Commission, by its Opinion No. 413, reverted to the rate-making practices which had existed prior to 1960. This was to continue, presumably, until the completion of the new area rate proceeding then under way in Docket No. AR69–1.

Mobil immediately tendered proposed rate increases in accordance with the provisions of Opinion No. 413. But before January 10, 1971, the date these increases were to take effect, a group of parties in the pending area rate proceeding filed a motion for approval of a proposed settlement of Southern Louisiana Area rates for both past and future periods. The settlement proposal, offered by a group called the "United Distribution Companies" (UDC), was endorsed by major producers, pipeline purchasers, distribution companies, and most other parties in Docket Nos.

3. Order Establishing Procedures with Respect to Increased Rate Filing in South-
ern Louisiana, Docket No. AR69–1 (FPC, Oct. 27, 1970).

AR61–2 et al., and AR69–1.[4] The settlement was opposed on varying grounds by a number of other parties, including Mobil. By its terms the settlement proposal, if adopted, would have raised the area rate levels instead of removing the ceiling altogether.

On November 27, 1970 AGD applied for rehearing of the Commission's Opinion No. 413, which lifted the moratorium and permitted new rate filings above the previously established area rates. On December 24, 1970 the Commission granted rehearing in part and modified Opinion No. 413 by establishing new, higher rate ceilings on a temporary basis in lieu of the earlier lifting of the ceiling. The new rate ceilings were those set out in the pending but opposed UDC settlement. The Commission gave these reasons for its action:

> We did not, in either Order No. 413 or the accompanying order in Docket No. AR69–1, impose any limitation on rate increase filings which might be made subsequent to the lifting of the moratorium. Rate increases filed thereafter were therefore subject only to the price limitations of the governing contracts. AGD states in its application for rehearing that it agrees with the objective of the Commission's action but suggests that such rate increases be limited to the rate levels set forth in the settlement proposal filed in Docket Nos. AR61–2 et al. and AR69–1 subsequent to the issuance of Order No. 413 and the order in Docket No. AR69–1.
>
> We are well aware that a few parties have responded to the settlement proposal by contending that the settlement rates are either too low or too high. The settlement proposal, on the other hand, has widespread support among many of the interested parties involved in those proceedings. While we presently make no determination as to the merits of these respective

positions, we believe the proposed settlement ceilings provide a justifiable temporary ceiling for increased rate filings. We shall therefore modify our previous orders regarding the moratorium provisions so as to limit rate increase filings, as permitted by contract, to the levels set forth in the filed settlement proposal. (footnote omitted)

The modified rate ceilings established by this Opinion were temporary only, and were to expire on June 30, 1971.

Pursuant to the newly established rate ceilings, the Commission rejected any increases which had been filed, to the extent they exceeded the newly established moratorium levels. Some producers, however, were still collecting charges in excess of the earlier rate ceilings established in October of 1968 by Opinion No. 546. This came about because the orders which would have required these producers to reduce their rates and refund excess charges had been stayed until December 7, 1970 pending completion of judicial review. The Commission took no action to order reductions after December 7 because the lifting of these ceilings on October 27, 1970 effectively mooted the need to reduce excess rates, and the refund question had not been resolved. By its Opinion of December 24, 1970 the Commission permitted those producers who were then charging in excess of the new ceiling levels to continue with such rates subject to refund as determined in the then pending area rate proceeding.

Mobil moved for a stay pending rehearing, and for rehearing and reconsideration of the December 24 Opinion. Mobil contended that the Commission erred in the following particulars, among others:

> A. The acceptance of the ceiling rates in the UDC settlement proposal as record evidence was arbitrary, capricious, unduly discriminatory, un-

---

4. The settlement had the support of 46 producers accounting for 80 percent of the gas production in the Southern Louisiana

Area, Opinion No. 598, at 8 (mimeographed ed.).

duly preferential, and a denial of due process of law to those who opposed such proposal, and deprived such parties of their rights under sections 4 and 5 of the Natural Gas Act and the Fifth Amendment to the Constitution of the United States.

B. The Commission had created a preferential competitive advantage for those producers who had previously filed for and were collecting rates in excess of the ceiling rates in the UDC settlement proposal.

C. The Commission had created an unreasonable and an unduly discriminatory disadvantage for those producers who were contractually entitled to but were prohibited by the Commission from filing for and collecting rates as high as other producers in the Southern Louisiana Area in violation of sections 4 and 5 of the Natural Gas Act and the Fifth Amendment to the Constitution of the United States.

D. The Commission order was not based on valid findings of fact that the levels in the UDC settlement proposal constituted proper ceiling rates, nor was there substantial evidence supporting any findings that the proposed settlement rates were the proper ceiling rates.

On February 10, 1971 the Commission denied Mobil's request for rehearing and stay of the Opinion of December 24, 1970. In No. 71–1260 Mobil is appealing from the action of December 24.

While Mobil's application for rehearing of the Commission's December 24 Opinion was pending, the Commission on January 28, 1971 issued a letter order rejecting Mobil's tendered rate increases on the authority of the December 24 order. Mobil applied for rehearing of this letter order, which was denied by the Commission on March 25, 1971. In No. 71–1261 Mobil seeks review of the January 28 order.

The limitations imposed by the Commission's Opinion of December 24, 1971 were by the terms of the Opinion to expire on June 30, 1971. As of that date,

however, the Commission's final decision in the new area rate proceedings in Docket Nos. AR61–2 et al. and AR69–1 had not been completed. Accordingly, in an order further modifying Opinion No. 413, issued June 29, 1971, the Commission extended the temporary rate ceiling established by Opinion No. 413 until " . . . September 30, 1971, or until such time as the Commission issues an Opinion and Order establishing just and reasonable rates for jurisdictional sales of natural gas from Southern Louisiana, whichever occurs at the earlier date." Mobil sought rehearing of this order. The request was denied by the Commission on August 24, 1971 on the following grounds:

[Mobil's] arguments were rejected by the Commission in its order issued February 10, 1971 denying rehearing of the December 24, 1970 order. They are likewise rejected here. In addition, in view of the issuance of Opinion No. 598, the question posed here is moot assuming, of course, that the Commission's action in that case is upheld upon judicial review.

In No. 71–1721 Mobil seeks review of the Commission's June 29, 1971 order.

Before Mobil sought rehearing of the June 29, 1971 order extending the temporary ceiling established on December 24, 1970, the Commission concluded the proceedings in Docket Nos. AR61–2 et al., and AR69–1. On July 16, 1971 the Commission issued Opinion No. 598, which established, as of August 1, 1971, just and reasonable rates for natural gas produced in the Southern Louisiana Area. These rates were set at the same levels established by the temporary moratorium provisions of Opinion No. 413 of December 24, 1970. As indicated previously, the December 24, 1970 price ceilings were based on the settlement proposal in which Mobil did not join.

In determining the legality of the Commission's actions in these three consolidated appeals, three issues must be resolved. First, is this case rendered moot by the Commission's action in

Opinion 598 establishing just and reasonable rates for the Southern Louisiana Area? Second, were the procedures employed by the Commission prior to its action of December 24, 1970, and the statement of reasons supporting that action, legally sufficient under the Natural Gas Act and the Administrative Procedure Act? Finally, we are asked to decide the merits of Mobil's claim that the December 24, 1970 Opinion established unduly preferential and discriminatory rates which render the order and the subsequent actions based thereon invalid.

■ The Commission claims that Mobil's contentions have been rendered moot by Opinion No. 598, which established area rates for the Southern Louisiana Area at levels identical to those set by the December 24 Opinion which Mobil challenges. We do not agree.

Mobil claims a continuing interest in this controversy because the validity of Opinion No. 598 will not be established until the process of review has run its course. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 456 F.2d 326, 340 (5th Cir.), rev'd on other grounds, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972). We think, however, that Mobil's claim does not rest on the invalidity of Opinion No. 598; the claim relates to the validity of the Commission's Opinion No. 413 of October 27, 1970 and to the rate structure which Opinion No. 413 and the modification of that Opinion on December 24 established. The Commission's action in the area rate proceedings, Docket Nos. AR61–2 et al., and AR69–1, and the decision of the court reviewing those proceedings, will not affect the validity of the Commission's actions between December 24, 1970 and August 1, 1971, the date on which the effect of Opinion No. 413 ended.

■ Mobil makes a stronger and, we think, a decisive argument by asserting that if the Commission's actions here under review were unlawful, the Commission could retroactively [5] permit Mobil to raise its rates for the period between January 10, 1971 [6] and August 1, 1971. These retroactive rate increases would, of course, be subject to refund of charges in conformity with rate levels set in the area rate proceedings in Docket Nos. AR61–2 et al., and AR69–1. Since review of those area rate proceedings is not yet completed, we cannot state with certainty the amount of such retroactively increased charges, if any, which Mobil might have to refund. If the Commission's area rates are not sustained on review, and on remand the rates are adjusted upward, Mobil might not have to refund the full amount of its retroactive rate increase. And if the Commission's rate levels are sustained, Mobil claims that a required refund at seven percent interest will still inure to its benefit, for it can realize in excess of seven percent on the added fund while holding it subject to refund.[7] In these circumstances we cannot say that Mobil has no continuing interest to assert.

Mobil's primary contention before this court relates to the procedures employed by the Commission in promulgating its Opinion of December 24, 1970 and thereafter rejecting, without a hearing, Mobil's application for rate increases made pursuant to the October 27, 1970 Opinion which lifted the area rate ceiling and rate filing moratorium.

■ The Commission's action of October 27, 1970 was preceded by a notice

---

5. The Commission has asserted such power in this case: "The Commission has authority to permit a rate to become effective retrospectively when it has improperly refused to allow a higher rate to become effective because of an invalid moratorium. Hunt v. F.P.C., 306 F.2d 334, 345 n. 21 (CA5, 1962), reversed on other grounds, 376 U.S. 515 [84 S.Ct. 861, 11 L.Ed.2d 878] (1964)." Order Denying

Hearing Doc. Nos. AR61–2 et al., AR69–1 (FPC April 13, 1971).

6. The date on which rate filings were to become effective under the terms of the Commission's October 27, 1970 Opinion lifting the rate ceilings altogether.

7. Pending judicial review of Opinion 598, refunds have not been ordered.

of rulemaking and the filing of comments from interested parties. No formal hearing was held by the Commission; the procedures can aptly be characterized as "informal". The Commission's action of December 24, 1970 was taken upon reconsideration of the October 27 Opinion. No hearing was held at which evidence was adduced, and no additional public comments were solicited. The only new matter before the Commission was the UDC settlement proposal.[8]

In its opinion accompanying the lifting of the moratorium on October 27, 1970 the Commission had stated:

Nor is there adequate justification for imposing any additional limitation on the level to which producers may file, aside from contract limitations inherent in the various producer contracts.

In its December 24, 1970 Opinion, the Commission reversed this position by imposing new, higher rate ceilings, placing primary reliance on the UDC settlement proposal as a basis for its shift. No further grounds were advanced by the Commission in the opinion accompanying the extension of the temporary moratorium on June 29, 1971.

Pursuant to the October 27, 1970 Opinion lifting the moratorium on rate filings, Mobil applied for rate increases in excess of the later temporary moratorium levels established on December 24, 1970. The Commission, on January 28, 1971, rejected Mobil's rate requests summarily, without a hearing, to the extent they exceeded the newly established temporary rate ceilings. This summary action was based on the December 24, 1970 Opinion.

Mobil claims that the Commission's procedures were inadequate to support the Commission's December 24, 1970 action, in that they deprived Mobil of its right to a hearing on the reasonableness of its rejected rate request under section 4 of the Act, 15 U.S.C. § 717c(e). Mobil also claims that the Commission's actions of December 24, 1970 and June 29, 1971 are unsupported by findings of fact or substantial evidence, and therefore invalid.

Central to our review of the Commission's actions is a determination of the nature of the proceedings which the Commission was conducting. In our view the Commission on December 24, 1970, in undertaking a review of its October 27 rule, was continuing to exercise its rulemaking authority. All subsequent action of the Commission was based on the December 24 rule.

■ Section 16 of the Natural Gas Act, 15 U.S.C. § 717o, grants the Commission the ". . . power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter." The Commission's action on October 27, 1970, from which its later action of December 24, 1970 stemmed on reconsideration, was not an "adjudication", "order", or "licensing" within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 551(6), (7), (8) (1970); rather, it was a rule, ". . . an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or

---

8. Mobil contends that the Commission's reliance on the UDC settlement proposal was error, in light of section 118 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 1.18(e) (1970), which provides: "Unaccepted proposals of settlement or of adjustment or as to procedure to be followed and proposed stipulations not agreed to shall be privileged and shall not be admissible in evidence against any counsel or person claiming such privilege."

The Commission has held, however, that the privilege against the use of offers of settlement conferred by section 1.18(e) runs only to the person who made the offer. Order Denying Applications for Rehearing of Order No. 449, F.P.C. Docket No. R–338, March 30, 1972. Since this interpretation of the regulation is not arbitrary or unreasonable, we accept it. *See* Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); 4 K. Davis, Administrative Law Treatise § 30.12 (1958).

policy or . . . prescription for the future of rates. . . ." 5 U.S.C. § 551(4). The Commission's proceedings to establish a temporary area rate level, which include the action of December 24, 1970, clearly fall within this definition. Future rates of general applicability, designed to implement the Commission's previously established area rate policy were established by the December 24, 1970 Opinion. These actions constitute rulemaking, see Permian Basin Area Rate Cases, 390 U.S. 747, 776 n. 40, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968); FPC v. Texaco, 377 U.S. 33, 44–45, 88 S.Ct. 1105, 12 L.Ed.2d 112 (1964); United Gas Pipe Line Co. v. FPC, 86 U.S.App.D.C. 314, 315, 181 F.2d 796, 797, cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950); 1 K. Davis, Administrative Law Treatise § 5.02 (1958), despite their temporary nature, and our review in this case must be governed accordingly.

Having concluded that the Commission's action of December 24, 1970 was rulemaking, we can test the procedure employed against the appropriate requirements for rulemaking in the Administrative Procedure Act. Section 4 of that Act requires, with exceptions not here material, that rulemaking must be preceded by appropriate published notice. 5 U.S.C. § 553(b). No challenge has been made to the adequacy of the Commission's notice of proposed rulemaking of July 30, 1970, 35 Fed.Reg. 12559. "After notice required by this section, the agency shall give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(c). Public comments were solicited, received, and evaluated by the Commission, including comments from Mobil. No hearing is required by the Administrative Procedure Act unless otherwise required by statute, 5 U.S.C. § 553(c), and we find in section 16 of the Natural Gas Act no requirement of a hearing prior to the promulgation of a rule. In short

the procedures which the Commission employed in issuing Opinion No. 413 on October 27, 1970, and the modification of that Opinion on December 24, 1970, fully complied with the requirements of the Natural Gas Act and the Administrative Procedure Act.

 Mobil contends further that the summary rejection of its rate filing on January 28, 1971 denied it a right to a hearing required by section 4 of the Natural Gas Act, 15 U.S.C. § 717c(e). We cannot agree. The Commission's summary action was based on the moratorium which it established by rule on December 24, 1970. To require the Commission, after promulgating a valid moratorium rule prohibiting certain rate increases, to proceed thereafter on a case-by-case basis with respect to filings falling within that prohibition would utterly destroy the value of the established moratorium. Such a result is not required by the Natural Gas Act. See FPC v. Texaco, 377 U.S. 33, 44, 88 S.Ct. 1105, 12 L.Ed.2d 112 (1964); see generally Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

Another point raised by Mobil, however, raises more difficult problems. In its opinion lifting the area rate moratorium on October 27, 1970 the Commission stated that "no adequate justification" existed for imposing higher rate ceilings rather then lifting the moratorium altogether. In its opinion of December 24, 1970 the Commission adopted the opposite view, imposed higher rate ceilings, but stated no findings in support of this shift. Mobil claims that the December 24, 1970 action was unsupported by substantial evidence and findings of fact, and therefore invalid.

 We must again emphasize that we are dealing here with a rule, not an adjudicatory order. When promulgating a rule, an agency is not required to abide by the same stringent requirements of fact findings and supporting reasons which apply to adjudication. The Administrative Procedure Act, 5 U.

S.C. § 553(c), requires only that ". . . the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." The Commission has satisfied these minimal procedural requirements in this case, and it is not for us to require more, whatever may be our views on the wisdom of this policy. *See* City of Chicago v. FPC, 148 U.S.App.D.C. 312, 458 F.2d 731, 742–43 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972).

■ Nor is it our function to determine whether the Commission's December 24 rule is supported by substantial evidence. The Natural Gas Act does not require an evidentiary hearing and the amassing of substantial evidence as a basis of valid rules. *See* City of Chicago v. FPC, 148 U.S.App.D.C. 312, 321–326, 458 F.2d 731, 740–745 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495 (1972); United Gas Pipe Line Co. v. FPC, 86 U.S.App.D.C. 314, 181 F.2d 796, cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950). Moreover under the Administrative Procedure Act, 5 U.S.C. § 706(2)(E), we do not apply the substantial evidence test to a rule such as we have here. Our test is much more limited.

In United Gas Pipe Line Co. v. FPC, 86 U.S.App.D.C. 314, 181 F.2d 796, cert. denied, 340 U.S. 827, 71 S.Ct. 63 (1950), this court held that it had no jurisdiction under 15 U.S.C. § 717r(b) to review rules of the Federal Power Commission in the absence of a ". . . decision based on evidence presented in a quasi-judicial proceeding before the Commission." (footnote omitted) 86 U.S.App. D.C. at 316, 181 F.2d at 798. The court declined to review the rule challenged in that case, because in the absence of an evidentiary record developed at a hearing no evaluation of the Commission's rule could take place. 86 U.S.App.D.C. at 317, 181 F.2d at 799. The continuing authority of the *United Gas* case has been questioned. City of Chicago v. FPC, 148 U.S.App.D.C. 321–322, 458 F.

2d at 740–741, but we need not decide in this case the extent to which its holding must be followed, for under traditional standards of review of rules the Commission's action must be sustained.

■ Having concluded that the rule promulgated by the Commission on December 24, 1970 was accompanied by satisfactory procedural safeguards and rested within the Commission's delegated authority, we may decide only whether the rule is reasonable. We cannot substitute our notions of reasonableness for those of the Commission. Rather, we must determine, on the basis of the information in the record before us, City of Chicago v. FPC, 148 U.S.App.D. C. 312, 458 F.2d 731 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495 (1972), whether the ". . . rate selected by the Commission . . . is within a 'zone of reasonableness'." Permian Basin Area Rate Cases, 390 U. S. 747, 767, 88 S.Ct. 1344, 1360 (1968).

■ The information before the Commission, which forms the "record" before this court, is scant. Yet, if from this record we can determine ". . . that the factual predicate for the Commission's action could be a reasoned conclusion from the record as a whole . . . ." the Commission's action must be sustained. City of Chicago v. FPC, 148 U.S.App.D.C. 326, 458 F.2d at 745.

The Commission promulgated its rule of December 24, 1970 as a temporary measure. An earlier area rate ceiling had been determined to be too low in light of the decreasing supply of natural gas in relation to its demand. The Commission's objective in its rulemaking proceedings was to act quickly to remedy the supply problem on a temporary basis by permitting higher producer rates, thus generating more revenue for exploration and development of natural gas reserves. On October 27, 1970 the rate ceiling in the Southern Louisiana Area was lifted. Mobil did not object to this ruling. On the contrary, as we

have seen, in its comments supporting the termination of the moratorium Mobil stated that the Commission had ". . . an adequate record to support a waiver or lifting of the moratoria." (J.A. 44) Thereafter it was suggested that the moratorium ceilings on rate filings be raised rather than lifted completely in order to avoid ". . . a substantial and uneven increase in revenues to certain producers, beyond those which [could] reasonably be related to an expanded exploration and development effort in this area." (footnote omitted) Application of Associated Gas Producers for Rehearing of Order No. 413 (J.A. 95). It appeared that a number of producers had filed substantial rate increases in accordance with the Commission's action of October 27, 1970, some of these, including Mobil's, at levels at or exceeding 150 percent of pre-existing rates. *Id.* The soundness of widespread use of the refund remedy was also questioned in the Associated Gas Producers' request for rehearing. And the Commission was facing the prospect of an increased administrative workload as a result of having to evaluate the reasonableness of each rate increase application individually.

The settlement proposal was directed to these problems. Its terms were exhaustive. It purported to permit rate increases which were consistent with the Commission's stated objectives of promoting an increased exploration and development effort. While no economic data were offered in support of this assertion the ceiling prices established in the settlement proposal were at least fifteen percent higher than those existing under the previous area rate structure, (J.A. 70), and the Commission, deeply involved in the Southern Louisiana and other area rate proceedings, may be presumed to have had a general idea of the range of rate increases which would be consistent with the public interest. A substantial majority of the affected parties in the pending area rate proceedings

in Docket Nos. AR61–2 et al., and AR 69–1 joined the settlement proposal.[9] It must also be reemphasized that the new ceiling was to be temporary, pending the establishment of a new area rate structure.

Under these circumstances we cannot conclude that the Commission's action was unreasonable or arbitrary, or that the rates established on December 24, 1970 fall outside a "zone of reasonableness". Accordingly, the Commission's actions of December 24, 1970, and the action of June 29, 1971, which was based on the same reason, must be sustained.

At the core of Mobil's case is its complaint, asserted consistently throughout the administrative proceedings, that under the December 24, 1970 Opinion certain producers, who before October 1968 had been collecting rates at levels exceeding the early "guidelines", were permitted to continue the collection of those charges, subject to refund, even though such charges exceeded the temporary levels prescribed by the December 24 Opinion. Mobil claims that by permitting these higher rates to be charged by some producers, the Commission violated section 5(a) of the Act, 15 U.S.C. § 717d(a), which prohibits:

> any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection with any transportation or sale of natural gas, subject to the jurisdiction of the Commission, or . . . any rule, regulation, practice, or contract affecting such rate, charge, or classification [which] is unjust, unreasonable, unduly discriminatory, or preferential. . . .

We must reemphasize the discretion which is necessarily accorded the Commission in the exercise of its rulemaking power, and the concomitantly narrow scope of our review in light of that consideration. *See* FCC v. Schreiber, 381 U.S. 279, 288–291, 85 S.Ct. 1459, 14

9. *See* note 4 *supra.*

L.Ed.2d 383 (1965); American Telephone & Telegraph Co. v. United States, 299 U.S. 232, 236–237, 57 S.Ct. 170, 81 L.Ed. 142 (1936); United Gas Pipe Line Co. v. FPC, 86 U.S.App.D.C. 314, 181 F.2d 796, cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950). In the circumstances of this case we would be hesitant to substitute our judgment on the delicate balance between rate equality and administrative need unless the Commission's position is patently illegal or unreasonable.

Section 5(a) of the Act prohibits rate practices which are "unjust, unreasonable, unduly discriminatory, or preferential." The Commission has determined that the practice in area rate proceedings of permitting pre-existing charges to be continued, subject to refund at seven percent interest, does not violate this proscription. We cannot say that this policy is unreasonable or unsound. We are concerned here with temporary rate ceilings established pending the determination of a final area rate. The authority of the Commission to establish such ceilings is not challenged here. A requirement that the Commission, each time such a temporary ceiling is set, order all producers to lower their rates to the ceiling level would defeat the purpose of the temporary rate measure. The final area rate may ultimately be established at a level above or below the temporary level, and we cannot say that the Commission was unreasonable in declining to require continuing readjustment pending the final decision.

These considerations must be weighed against the inequalities which the system inevitably will foster. The Commission has determined that by requiring those companies charging in excess of the temporary rate ceiling to refund the excess, with interest at seven percent, such inequalities will be reduced to a minimum. We cannot disturb this conclusion as patently unreasonable in the circumstances of this case, even though inequalities or discrimination may remain, depending on the rate of return a company could earn on the fund generated by the higher rates, and the level at which final area rates are set.

Although the Commission's procedures in this case may not be a model of administrative action, we are mindful of our limited function on review and the difficult circumstances in which the Commission has operated. Accordingly the petitions for review are denied.

So ordered.