**PRODUCTION FARM MANAGEMENT,**
**Plaintiff-Appellant,**

v.

**William BROCK,\* Secretary of Labor, et al., Defendants-Appellees.**

**No. 84-2734.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1985.

Decided Aug. 8, 1985.

Thomas N. Crowe, Hiner, Crowe & Scott, Phoenix, Ariz., for plaintiff-appellant.

Mark B. Stern, Washington, D.C., for defendants-appellees.

43(c)(1).

Before FERGUSON, NORRIS and WIGGINS, Circuit Judges.

FERGUSON, Circuit Judge:

Production Farm Management ("PFM"), an Arizona corporation engaged in the growing and harvesting of citrus fruit in Maricopa County, Arizona, brought suit against the United States Department of Labor ("DOL"), the Secretary of Labor (the "Secretary") and the Regional Administrator challenging the promulgation, enforcement and implementation of an Adverse Effect Wage Rate ("AEWR") for the state of Arizona. The AEWR establishes the minimum hourly wage payable by agricultural growers employing nonimmigrant aliens admitted to work temporarily in the United States so that the admission of such workers will not adversely affect the wages of similarly employed United States workers. The district court granted summary judgment in favor of the defendants. PFM appeals, contending that the actions of the Secretary in determining and adopting the AEWR for Arizona were arbitrary, capricious, and an abuse of discretion. Finding that the administrative record adequately sustains the Secretary's rulemaking authority, we affirm.

## I.

The Immigration and Nationality Act, 8 U.S.C. §§ 1101–1503, provides that if insufficient United States workers are available foreign workers may be granted visas to work temporarily in the United States for such time and under such circumstances as the Attorney General may prescribe by regulation. 8 U.S.C. §§ 1101(a)(15)(H)(ii), 1184(a). These workers are referred to as H–2 workers. The Attorney General has delegated his authority to determine whether to admit H–2 workers upon petition of the employer who requires their labor, 8 U.S.C. § 1184(c), to the Commissioner of the Immigration and Naturalization Service ("INS"). 8 C.F.R. § 100.2(a). The INS has, in turn, issued regulations governing employment of foreign seasonal labor which require employers applying for the admission of such workers to first obtain certification from the DOL that sufficient qualified United States workers are unavailable for the jobs and that the temporary employment of the foreign workers will not adversely affect the wages and working conditions of similarly employed United States workers in the area. 8 C.F.R. § 214.2(h)(3)(i)(A). DOL therefore has promulgated regulations governing the certification process. 20 C.F.R. §§ 655.-200–655.212.

To insure that the employment of foreign workers does not depress the wages of similarly employed United States workers, DOL conditions certification upon the employers' offering no less than the AEWR as the minimum hourly wage for both foreign and United States workers. 20 C.F.R. § 655.202(b)(9)(i). The AEWR is defined as

the wage rate which the Administrator has determined must be offered and paid to foreign and U.S. workers for a particular occupation and/or area so that the wages of similarly employed U.S. workers will not be adversely affected. The Administrator may determine that the prevailing wage rate in the area and/or occupation is the adverse effect rate, if the use (or nonuse) of aliens has not depressed the wages of similarly employed U.S. workers. The Administrator may determine that a wage rate higher than the prevailing wage rate is the adverse effect rate if the Administrator determines that the use of aliens has depressed the wages of similarly employed U.S. workers.

20 C.F.R. § 655.200(b).

DOL has calculated AEWRs for states including Arizona since 1962. *See, e.g.,* *Limoneira v. Wirtz,* 225 F.Supp. 961 (S.D. Cal.1963), *aff'd,* 327 F.2d 499 (9th Cir.1964) (DOL required braceros be paid an AEWR above the prevailing wage). Although DOL calculates AEWRs and adjustments thereto annually, no AEWRs are published for a state until employers in that state seek certification for nonimmigrant alien workers. *See* 44 Fed.Reg. 49698 (Aug. 24, 1979). Because no such certification was

sought by Arizona employers until 1979, no AEWR was actually published for Arizona until that year. 44 Fed.Reg. 49697 (Aug. 24, 1979).

In 1979, it appears that the bulk of the labor force employed in harvesting Arizona's citrus crops consisted of undocumented alien workers. With this pool of labor available, employers offered only the Fair Labor Standards Act minimum wage of $2.90 in their requests for certification. DOL's calculation for the previous year, however, had established an unpublished AEWR of $3.13. Indeed, Arizona applications filed during 1978 had offered the $3.13 wage (even though no certification was actually given that year). DOL then determined that in order for employment of H–2 workers not to produce an adverse effect on United States wages in Arizona, the AEWR should be set at $3.67. 44 Fed.Reg. 49699 (Aug. 24, 1979). After receipt of comments, DOL issued a final rule establishing the $3.67 AEWR for Arizona. 44 Fed.Reg. 55825 (Sept. 28, 1979). Thus, Arizona became one of the fourteen states for which DOL has calculated the AEWR to be different from the prevailing wage rate in the intended area of employment. 20 C.F.R. § 655.207(a), (b)(2).

The AEWR is adjusted each year by DOL on the basis of its statistical methodology. Between 1968 and 1981, DOL computed adjustments to the AEWR by using the same percentage as the change in the annual average wage rates for field workers as surveyed by the United States Department of Agriculture ("USDA"). During that period the USDA survey covered wages paid during one week each calendar quarter. *See* 48 Fed.Reg. 40168 (Sept. 2, 1983). In 1982 however, the USDA ceased its quarterly survey and began conducting only an annual survey based on a single measurement in July. The USDA thus effectively excluded from its survey the harvest seasons in which the bulk of nonimmigrant alien workers are employed. Therefore, because the annual USDA survey would not provide an adequate basis for calculating adjustments in the AEWR, 48 Fed.Reg. 233 (Jan. 4, 1983), in 1983 DOL proposed using data received by the Bureau of Labor Statistics through the Employment and Wages Program ("ES–202 Program") to determine adjustments to the AEWR. 48 Fed.Reg. 33684 (July 22, 1983). The ES–202 Program provides a quarterly survey and includes data received from employers using the bulk of nonimmigrant alien agricultural workers.

DOL received over two hundred comments in response to this proposed rule. Many growers objected to the use of ES–202 data, preferring the continued use of USDA data, while groups representing United States farmworkers approved the use of ES–202 data, finding that this data provided the most realistic measure of general farm wage trends. *See* 48 Fed.Reg. 40170 (Sept. 2, 1983).

On August 31, 1983, DOL published its final AEWR rule, 20 C.F.R. § 655.207(b), (c), adopting its proposed regulation modified by the comments received. Under this regulation (using ES–202 Program data), the 1983 AEWR for Arizona was calculated at $4.22. 48 Fed.Reg. 40170 (Sept. 2, 1983). The use of USDA data advocated by growers, including PFM, would have resulted in an AEWR of $4.11.

PFM then brought this suit to restrain DOL from applying the AEWR for Arizona. DOL filed a motion for summary judgment on the ground that the administrative record demonstrated that DOL's AEWR determination was a reasonable exercise of its rulemaking authority. The district court granted this motion but then set aside its orders in response to PFM's subsequent motion for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. The court then granted PFM's motion for summary judgment. Subsequently the court vacated this judgment to permit supplemental briefing. After reargument, the court granted DOL's motion for summary judgment. PFM appeals.

## II.

PFM does not challenge the DOL's choice among competing formulas or data in calculating the AEWR but only the

DOL's determination that the employment of aliens by Arizona growers adversely affected the wages of similarly employed United States workers so that the promulgation of an AEWR different from the prevailing wage rate in the area was necessary for Arizona. Because the rulemaking actions of an administrative agency will not be set aside unless such actions are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), the sole issue before us is whether the actions of the Secretary in setting an AEWR for Arizona violated this standard. *Columbia Basin Land Protection Association v. Schlesinger,* 643 F.2d 585, 596 (9th Cir. 1981).

Our scope of review under the "arbitrary and capricious" standard is narrow and we may not substitute our judgment for that of the agency. *Motor Vehicle Manufacturers' Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Furthermore, the fact that this court is reviewing rulemaking proceedings rather than agency adjudication is also important since " '[w]hen promulgating a rule, an agency is not required to abide by the same stringent requirements of fact findings and supporting reasons which apply to adjudication.' " *Florida Sugar Cane League, Inc. v. Usery,* 531 F.2d at 303 (quoting *Mobil Oil Corp. v. Federal Power Commission,* 469 F.2d 130, 139 (D.C.Cir.1972), *cert. denied,* 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 159 (1973)). *Cf. Industrial Holographics, Inc. v. Donovan,* 722 F.2d 1362, 1367 (7th Cir.1983) ("A complete and thorough analysis of all relevant factors affecting the impact of each individual alien's employment on the labor market is clearly out of the question.").

Viewing the actions of the DOL under this standard, we find that its promulgation of an AEWR for the State of Arizona was a reasonable exercise of its rulemaking authority. Using INS records and affidavits of employers filed in federal court, DOL determined that the bulk of the labor force employed in harvesting Arizona's citrus crops consisted of undocumented alien workers. DOL then determined that this available pool of alien workers had depressed the wages of similarly employed United States workers in that area. This determination was based primarily upon its knowledge of the law of supply and demand, the various comments filed in the 1979 comment procedure, and the fact that agricultural employers offered workers a wage of $3.13 per hour in 1978 H–2 applications and only $2.90 per hour in similar applications in 1979. Under 20 C.F.R. § 655.200(b), this permitted DOL to set an AEWR higher than the prevailing wage rate.

III.

The Secretary did not act arbitrarily or capriciously nor abuse his discretion in promulgating an AEWR for the State of Arizona. We therefore AFFIRM the district court.