**DEUTSCHE LUFTHANSA AKTIENGE-SELLSCHAFT, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,
Respondent.**

No. 72–1052.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 7, 1972.

Decided April 18, 1973.

G. Nathan Calkins, Washington, D. C., with whom Arthur D. Bernstein, Washington, D. C., was on the brief, for petitioner.

Alan R. Demby, Atty., C. A. B., with whom R. Tenney Johnson, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Warren L. Sharfman, Associate Gen. Counsel, C. A. B., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondent.

Before SIMON E. SOBELOFF,* Senior Circuit Judge for the Fourth Circuit, and TAMM and LEVENTHAL, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

This is a direct appeal by the petitioner, Deutsche Lufthansa Aktiengesellschaft, from a regulation promulgated by the Civil Aeronautics Board (the Board), requiring all domestic and foreign air carriers to include on their passenger tickets a notice of the limitation the carrier imposes on liability for baggage loss or damage.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

Lufthansa claims that the Board's regulation conflicts with the provisions of the Warsaw Convention and exceeds the Board's statutory authority. For the reasons set forth below we disagree with both contentions and affirm the Board's regulation.

## I. FACTS

Lufthansa, a citizen of West Germany, is a foreign air carrier and holds a foreign air carrier permit issued by the Board under § 402 of the Federal Aviation Act of 1958, as amended, 49 U.S.C. § 1372. All foreign and domestic carriers holding such permits are allowed to limit their liability for loss, delay, or damage to baggage to a specified dollar amount unless the customer declares a higher value and pays an additional charge in advance of the trip. These limitations must be included in the carriers' tariffs.

Most international flights are governed by the terms of the Warsaw Convention,[1] which limits a carrier's liability to approximately $7.50 per pound for checked baggage and $330 per passenger for unchecked baggage. Although carriers are permitted to establish higher limitations than those contained in the Warsaw Convention, few have actually done so. Since passengers often carry baggage containing items of great value, the liability sections of the Warsaw Convention provide inadequate protection. To be adequately insured, passengers must supplement the carriers' liability with private insurance.

Prior to promulgation of the instant regulation, the Board had required certificated foreign and domestic carriers to include in their tariffs, filed under § 403(a) of the Act,[2] any conditions limiting liability for damage to passenger baggage. It is questionable whether this constructive notice provided passengers with effective notice of the liability limitations. :

In 1963 the Board adopted Part 221.-175 of its Economic Regulations requiring carriers to furnish to passengers written notice of the liability limitation for death or personal injury or baggage loss claimed by the carrier under the Warsaw Convention. The notice was to be in writing, on or with the ticket. As for the question of the adequacy of notice of limitation of liability for baggage damage, the Board gave the carriers time to develop a voluntary method of notification. Subsequently the Board found that the voluntary notification procedures of the carriers were not doing the job. It was found that

> * * * the only explicit notice given by some carriers is that appearing in fine print "Conditions of Contract" on the back of the ticket and expressed in terms of "French gold francs (consisting of 65½ milligrams of gold with a fineness of nine hundred thousandths) or its equivalent." Even this fine print notice is no longer required by IATA [International Air Transport Association] in its recently amended conditions of contract.

Economic Regulations Docket # 20853 dated May 7, 1970, at p. 4.

As a result the Board adopted the instant regulation, § 221.176(b) of the Board's Economic Regulations, on August 24, 1971. The Regulation states in part:

> (b) Effective March 1, 1972, each air carrier and foreign air carrier which, to any extent, avails itself of limitations of liability for loss of, damage to, or delay in delivery of baggage shall include on each ticket issued in the United States or in a foreign country by it or its authorized agent, the following notice printed in at least 10-point type:

> NOTICE OF BAGGAGE LI-ABILITY LIMITATIONS

> Liability for loss, delay, or damage to baggage is limited as follows

---

1. Adhered to by the United States in 1934, 49 Stat. 3000–26; No. 876.

2. 49 U.S.C. § 1373(a).

unless a higher value is declared in advance and additional charges are paid: (1) for most international travel (including domestic portions of international journeys) to approximately $7.50 per pound for checked baggage and $330 per passenger for unchecked baggage; (2) for travel wholly between U.S. points, to $500 per passenger on most carriers (a few have lower limits). Excess valuation may not be declared on certain types of valuable articles. Carriers assume no liability for fragile or perishable articles. Further information may be obtained from the carrier.

> *Provided, however, That* carriers may include in their ticket notice the parenthetical phrase, "($16.58 per kilo)" after the phrase, "$7.50 per pound," in referring to the baggage liability limitation for most international travel.

Before the regulation was promulgated, all affected carriers were given opportunity to submit their views concerning the proposed regulation. Not a single carrier denied the need for adequate notice to passengers of limitations on liability; most of the comments merely questioned how effective the instant regulation would be. Only Lufthansa challenged the legality of the regulation. Lufthansa asked the Board to stay its order pending the outcome of this petition for review. The Board declined to do so and this court too denied a peti-

tion for stay on February 29, 1972. Thus the regulation took effect on March 1, 1972.

## II. JURISDICTION

[1] A most difficult preliminary question that must be answered is whether this court has jurisdiction over the instant case. Section 1006(a) of the Act, 49 U.S.C. § 1486(a),[3] confers jurisdiction on this appellate court to hear appeals from any final order issued by the Civil Aeronautics Board. But under an early and often cited decision, this court held that it had no jurisdiction over direct appeals from the promulgation of agency regulations where there had not been an evidentiary record established in a quasi judicial proceeding before the agency, United Gas Pipe Line Co. v. Federal Power Comm'n, 86 U.S. App.D.C. 314, 181 F.2d 796, cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950) (concerning regulatory authority under Natural Gas Act, 15 U.S.C. § 717r(b)); *see also* Arrow Airways v. Civil Aeronautics Board, 87 U.S.App.D. C. 71, 182 F.2d 705 (1950), cert. denied, 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1951). The *United Gas* decision was followed in many subsequent cases,[4] it being held that agency regulations promulgated without a prior evidentiary hearing by the agency are directly reviewable only in a district court. But the continuing vitality of *United Gas* has recently been called into question by this court,[5] and has not been followed in

3. 49 U.S.C. § 1486(a) provides:
 (a) Any order, affirmative or negative, issued by the Board or Administrator under this chapter, except any order in respect of any foreign air carrier subject to the approval of the President as provided in section 1461 of this title, shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order. After the expiration of said sixty days a petition may be filed only by leave of court upon a showing

of reasonable grounds for failure to file the petition theretofore.

4. *See, e. g.,* Alaska Airlines, Inc. v. Civil Aeronautics Board, 257 F.2d 229 (1958), cert. denied, 358 U.S. 881, 79 S.Ct. 120, 3 L.Ed.2d 111 (1958); C.A.B. v. American Air Transport, Inc., 91 U.S.App.D.C. 318, 201 F.2d 189, certificate dismissed, 344 U.S. 4, 73 S.Ct. 2, 97 L.Ed. 4 (1952); The Flying Tiger Line v. C. S. Murphy, et al., 244 F.Supp. 889 (D.C.D.C.1965), aff'd per curiam (D.C.Cir. #19,869, June 2, 1966), cert. denied, 385 U.S. 945, 87 S.Ct. 316, 17 L.Ed.2d 224 (1966).

5. Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d

situations where evidence has been assembled before the agency and is not challenged, and where the issues presented are legal and not factual. City of Chicago v. Federal Power Comm'n, 147 U.S.App.D.C. 312, 458 F.2d 731, 740–741 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972); *see also* Mobil Oil Corp. v. Federal Power Comm'n, 152 U.S.App.D.C. 119, 469 F.2d 130 (1972). In such cases there is no need to have the matter adjudicated at the district court level in order to have an appropriate record compiled. It is the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone.

■ In the instant case an evidentiary record does exist, as it did in *City of Chicago, supra* at 740–741. This record is unchallenged, so that the issues presented to us are legal and not factual. Notice was given the parties and Lufthansa was given ample opportunity to present its views before the rule was promulgated. *See also* Public Service Comm'n for State of New York v. Federal Power Comm'n, 150 U.S.App.D.C. 47, 463 F.2d 883 (1972).

Under these circumstances the petitioner should not be required to go first to the district court.

### III. WARSAW CONVENTION

Most modern day international air travel is governed by the rules established under the "Convention for the Unification of Certain Rules Relating to International · Transportation by Air," commonly referred to as the Warsaw Convention.[6]

Crucial to our disposition of this case is the meaning of Article 3 of the Convention, namely:

(1) For the transportation of passengers the carrier must deliver a passenger ticket which shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right, the alteration shall not have the effect of depriving the transportation of its international character;

(d) The name and address of the carrier or carriers;

(e) A statement that the transportation is subject to the rules relating to liability established by this convention.

(2) The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall nonetheless be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability.

■ We must determine whether the instant regulation is consistent with Article 3 and with the Convention in general.[7] First, we reject the argument that the terms of Article 3, including § 3(1)(e), are exclusive. Rather, the provisions of Article 3 may be supplemented by additional regulations. Indeed, many aspects of the passenger ticket are already governed by regulations not specifically contained in Article 3, but which were added by IATA agreements

---

1093, 1099 and n. 27 (1970); City of Chicago v. Federal Power Comm'n, 147 U.S.App.D.C. 312, 458 F.2d 730, 740–741 (D.C.Cir.1971); Mobil Oil Corp. v. Federal Power Comm'n, 152 U.S.App.D.C. 119, 469 F.2d 130 (D.C.Cir.1972).

6. *Supra* n. 1.

7. The Convention itself is self-executing, having been ratified by the United States Senate, U. S. Constitution Art. III, *see* Indemnity Insurance Co. of No. America v. Pan American Airways, 58 F.Supp. 338 (S.D.N.Y.1944).

and approved by the Board.[8] The terms of the instant regulation do not therefore, by their mere existence, violate the terms of the Convention since Article 3 may be supplemented.

Next, we reject Lufthansa's argument that the regulation is improperly broad—intended to apply to all passenger tickets issued anywhere in the world. In fact, the regulation is to apply only to flights within the jurisdiction of the Act. This jurisdiction is circumscribed by the words "Air Transportation," which are defined by the Act as common carriage to, from, or within the United States, 49 U.S.C. §§ 1301(10), 1301(21).[9]

The recent trend of appellate court decisions has been to accord substance to the protections that Article 3 of the Convention intended to provide airline passengers. The carriers are not to be permitted to use the article as a protective shelter to shield themselves from their responsibilities to the public.[10] Thus in Mertens v. Flying Tiger Line, Inc., 341 F.2d 851 (2d Cir. 1965), cert. denied, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965), the airline was not allowed to claim the Convention's limited liability for a passenger's death since the passenger did not receive the ticket, with its complicated notice of liability limitation, until he was already on the plane. Such a sequence of events violated Article 3 since it could not be said that the ticket was " * * * delivered to the passenger in such a manner as to afford him a reasonable opportunity to take measures to protect himself against the limitations of liability * * * " Id. at 856. See also, Warren v. Flying Tiger Line, Inc., 352 F.2d 494 (9th Cir. 1965).

In Lisi v. Alitalia-Linee Aeree Italiane, S. P. A., 370 F.2d 508 (2d Cir. 1966), aff'd, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968), the Court disallowed the airline's reliance on the limitation of liability provisions contained on a ticket because the notice was

* * * ineffectively positioned, diminutively sized and unemphasized by bold face type, contrasting color or anything else. The simple truth is that they are so artfully camouflaged that their presence is concealed. 370 F.2d at 514 (quoting language of trial court, D.C., 253 F.Supp. 237 at 243).

We read these cases broadly as requiring that passengers be afforded ample opportunity to comprehend the limitations of liability to which they are subjected, and that they be given a chance to purchase alternative, private insurance. Passengers are not to be required to traverse an obstacle course created by the carriers in order to successfully discover the nature of their rights and substance of the carriers' limitations on liability. The passenger is to receive full and effective notice of any limitations of liability so that alternative protection may be obtained.

Under the foregoing rationale, it may be stated that the instant regulation not

---

8. They include provisions concerning the physical format of the ticket as well as various conditions that are to be printed on the ticket. IATA Resolution 275, first approved by the Board in Order E–3230, Sept. 1, 1949. Additional conditions were imposed in amendments subsequently adopted. Order 69–2–65, Feb. 13, 1969; Order E–21116, July 24, 1964; Order E–20146, Nov. 1, 1963; Order E–11701, August 16, 1957.

9. Congress may regulate conduct of noncitizens, even if that conduct takes place in a foreign country, if the consequences of the conduct are felt within the United States, United States v. Aluminum Co. of America, 148 F.2d 416, 443 (2d Cir. 1945); United States v. Pacific Arctic Co., 228 U.S. 87, 105–106, 33 S.Ct. 443, 57 L.Ed. 742 (1913); cf. Timkin Roller Bearing Co. v. United States, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951) (antitrust cases).

10. The Warsaw Convention's provisions permitting limitations on liability have been criticized by commentators, Kreindler, The Denunciation of the Warsaw Convention, 31 J.Air L. & Com. 291 (1965); Sand, Air Carriers' Limitations of Liability & Air Passengers' Accident Compensation Under the Warsaw Convention, 28 J.Air L. & Com. 260 (1961–62).

only does not contradict the provisions of the Warsaw Convention but actually gives § 3(1)(e) substantive effect. Compliance with the regulation will not only provide passengers with adequate notice of the limitations on liability imposed on them but will later enable the carrier to invoke the protection of § 3(1)(e), for unless adequate notice is accorded its passengers, the carrier will later be precluded from using the Convention to limit liability.

This holding also disposes of another of petitioner's contentions, that § 1102 of the Act,[11] which requires the Board to act consistently with all United States treaties, precludes the enforcement of the instant regulation. Since we hold the regulation is consistent with the Warsaw Convention, it cannot therefore conflict with § 1102 of the Act.

## IV. STATUTORY AUTHORITY

 Finally, we reject Lufthansa's argument that the Board's regulation exceeds the agency's statutory authority under the Act. We find ample authority for the regulation in § 204(a)[12] and § 403(a)[13] of the Act.

 Section 204(a) confers broad regulatory authority upon the Board, and while the section is basically procedural, it may constitute part of the basis of substantive rule-making authority, when combined with another provision of the Act. *Cf.* National Airlines, Inc. v. Civil Aeronautics Board, 113 U.S. App.D.C. 146, 306 F.2d 753 (1952).

11. 49 U.S.C. § 1502:
 In exercising and performing their powers and duties under this Act, the Board and the Secretary of Transportation shall do so consistently with any obligation assumed by the United States in any treaty, convention, or agreement that may be in force between the United States and any foreign country or foreign countries, and shall take into consideration any applicable laws and requirements of foreign countries and the Board shall not, in exercising and performing its powers and duties with respect to certificates of convenience and necessity, restrict compliance by any air carrier with any obligation, duty, or liability imposed by any foreign country: Provided, That this section shall not apply to any obligation, duty, or liability arising out of a contract or other agreement, heretofore or hereafter entered into between an air carrier, or any officer or representative thereof, and any foreign country, if such contract or agreement is disapproved by the Board as being contrary to the public interest.

12. 49 U.S.C. § 1324(a):
 General powers and duties of the Board—Performance of acts; conduct of investigations; orders, rules, regulations, and procedure.
 (a) The Board is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedure, pursuant to and consistent with the provisions of this chapter, as it shall deem necessary to carry out the provisions of, and to exercise and perform its powers and duties under, this chapter.

13. 49 U.S.C. § 1373(a):
 Tariffs of air carriers—Filing, posting, and publication; rejection of tariffs.
 (a) Every air carrier and every foreign air carrier shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been established, and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation. Tariffs shall be filed, posted, and published in such form and manner, and shall contain such information as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations. Any tariff so rejected shall be void. The rates, fares, and charges shown in any tariff shall be stated in terms of lawful money of the United States, but such tariffs may also state rates, fares, and charges in terms of currencies other than lawful money of the United States, and may, in the case of foreign air transportation, contain such information as may be required under the laws of any country in or to which an air carrier or foreign air carrier is authorized to operate.

Section 403(a) of the Act regulates the Board's authority to order the filing, posting and publication of tariffs and regulates the information to be contained in the tariff. We believe the reason Congress requires that the tariffs be published is to provide the public with the information the tariffs contain and to insure that the public receives adequate notice of the tariff's contents. Although the instant regulation controls passenger tickets, not tariffs, we do not think § 403(a) precludes its adoption, for taken with § 204(a), § 403(a) permits the Board to regulate and control the notice the public is to receive from carriers concerning conditions the carriers impose on the public. The instant regulation requires adequate publication of the limitation on liability which carriers impose on the public through the passenger ticket. We find nothing in the regulation that either exceeds the Board's statutory authority or contradicts the terms of the Warsaw Convention. Accordingly, the action of the Board is

Affirmed.