**INVESTMENT COMPANY INSTITUTE, Appellant,**

**v.**

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM et al.**

**No. 75–1822.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1976.

Decided Jan. 14, 1977.

G. Duane Vieth, Washington, D.C., with whom James W. Jones and Leonard B. Simon, Washington, D.C., were on the brief, for appellant.

Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Ronald R. Glancz, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before McGOWAN, LEVENTHAL and ROBB, Circuit Judges.

Opinion for the court by Circuit Judge McGOWAN.

Separate concurring opinion by Circuit Judge LEVENTHAL.

McGOWAN, Circuit Judge.

In this appeal from the District Court, we are once again called upon to determine whether a litigant has selected an appropriate forum for judicial review of an administrative regulation, given a statute providing for direct review of agency "orders" in the courts of appeals. Appellant Investment Company Institute, a national association of open-end investment companies (commonly referred to as "mutual funds"), brought this action in the District Court, seeking declaratory and injunctive relief against a regulation and interpretative ruling, 12 C.F.R. §§ 225.4(a)(5)(ii), 225.125 (1976), promulgat-ed by the Federal Reserve Board under section 4(c)(8) of the Bank Holding Company Act of 1956, *as amended,* 12 U.S.C. § 1843(c)(8) (1970). Appellant claims that the regulation and ruling violate sections 16 and 21 of the Banking Act of 1933 (popularly known as the Glass-Steagall Act), 12 U.S.C. §§ 24, 378 (1970), and, as a result, exceed the Board's authority under section 4(c)(8) of the Bank Holding Company Act.

The District Court, by order and memorandum opinion dated July 30, 1975, dismissed the complaint for lack of subject matter jurisdiction, holding that section nine of the Bank Holding Company Act, 12 U.S.C. § 1848 (1970)—which vests jurisdiction in the courts of appeals to review Board "orders" under the Act—provides the exclusive means for obtaining review of a Board regulation supported by a comprehensive administrative record. For the reasons set forth hereinafter, we affirm. However, since this court's exclusive jurisdiction was not clearly established as of the time suit was being considered, appellant is not estopped from reasserting its claim in a court of appeals, if the Board should deny a future petition by appellant to amend or repeal the rules at issue.

I

The Bank Holding Company Act of 1956 generally prohibits bank holding companies from owning shares in companies which are not banks. 12 U.S.C. § 1843(a) (1970). Section 4(c)(8) of the Act provides an exception to this general ban for

> shares of any company the activities of which the [Federal Reserve] Board after due notice and opportunity for hearing has determined (by order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto.

12 U.S.C. § 1843(c)(8) (1970). The originally enacted version of this section allowed the Board to make the "closely related" determination only by order, on a case-by-case basis, after a full adjudicatory hearing.

*See* Act of May 9, 1956, C. 240, § 4(c)(6),[1] 70 Stat. 137. Correspondingly, the judicial review provision of the Act, section 9, provided for review of Board "orders" in the courts of appeals. A 1970 amendment added the language to section 4(c)(8) empowering the Board to act "by order or regulation,"[2] but made no change in section 9 of the Act.[3]

On May 20, 1971, the Board exercised its new rule-making authority by promulgating section 225.4 (originally designated section 222.4) of Regulation Y, 12 C.F.R. § 225.4, listing several activities deemed to be "closely related" to banking. One of these activities was:

> (5) Acting as investment or financial adviser, including (i) serving as the advisory company for a mortgage or a real estate investment trust and (ii) furnishing economic or financial information; * * *

36 Fed.Reg. 10777 (1971) (footnote omitted). The Board noted, however, that "[a]cting as investment adviser to an open-end investment company . . . is not regarded . . . as within the description of this activity." *See id.* (footnote to regulation). This caveat reflected the Board's concern over a recent decision by the Supreme Court in *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971), in which the Court had struck down those portions of a regulation promulgated by the Comptroller of the Currency which purported to authorize banks to establish and operate collective investment funds virtually indistinguishable from conventional mutual funds. *See id.* at 625, 91 S.Ct. 1091. The Court had found those provisions to be in violation of section 16 of the Glass-Steagall Act which, generally speaking, forbids a national bank from buying stock "for its own account" or underwriting any issue of securities or stock, as well as of section 21 of the Act, which prohibits any company "engaged in the business of issuing, underwriting, selling, or distributing" securities to engage at the same time in the business of banking. *See* 12 U.S.C. §§ 24, 378(a)(1) (1970).

Upon further consideration, the Board determined that the holding in *ICI v. Camp, supra,* did not foreclose expansion of investment adviser activities. Thus, on August 25, 1971, the Board—following the rulemaking procedures prescribed by section 4 of

---

1. The section was renumbered in 1966. *See* Act of July 1, 1966, Pub.L. No. 89–485, § 8, 80 Stat. 239.

2. Act of December 31, 1970, Pub.L. No. 91–607, Title I, § 103, 84 Stat. 1765. The 1970 amendment also established a second criterion which must be satisfied before a bank holding company may acquire shares in a company engaging in non-banking activities, the so-called "public benefits" test. Regardless of whether the Board rules on the "closely related" criterion by regulation or individual adjudications, the "public benefits" issue must be resolved on a case-by-case basis.

   For extensive analysis of the requirements of section 4(c)(8), see *Independent Bankers Ass'n v. Board of Governors,* 170 U.S.App.D.C. 301, 516 F.2d 1206 (1975), and *National Courier Ass'n v. Board of Governors,* 170 U.S.App.D.C. 301, 516 F.2d 1229 (1975).

3. Section 9 currently provides:

   Any party aggrieved by an order of the Board under this chapter may obtain a review of such order in the United States Court of Appeals within any circuit wherein such party has its principal place of business, or in the Court of Appeals in the District of Columbia, by filing in the court, within thirty days after the entry of the Board's order, a petition praying that the order of the Board be set aside. A copy of such petition shall be forthwith transmitted to the Board by the clerk of the court, and thereupon the Board shall file in the court the record made before the Board, as provided in section 2112 of Title 28. Upon the filing of such petition the court shall have jurisdiction to affirm, set aside, or modify the order of the Board and to require the Board to take such action with regard to the matter under review as the court deems proper. The findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive.

   12 U.S.C. § 1848 (1970). The version of section 9 enacted in 1956 granted an aggrieved party 60 days within which a challenge to an order could be brought. Act of May 9, 1956, C. 240, § 9, 70 Stat. 138. A 1966 amendment reduced the time for filing to the current 30 days. Act of July 1, 1966, *supra* note 1, § 10. A 1958 amendment to section 9 involved changes immaterial to the instant litigation. Act of August 28, 1958, Pub.L. No. 85–791, § 34, 72 Stat. 951.

the Administrative Procedure Act, 5 U.S.C. § 553—invited public comment on a proposal to amend § 225.4 of Regulation Y to encompass the following:

> (5) Acting as investment or financial adviser, including (i) serving as the advisory company for a mortgage or a real estate investment trust; (ii) *serving as investment adviser to an investment company registered under the Investment Company Act of 1940*; and (iii) furnishing economic or financial information.

36 Fed.Reg. 16695 (1971), *as corrected*, 36 Fed.Reg. 17514 (1971) (emphasis supplied). Numerous written comments were received in response to this notice of proposed rulemaking. Appellant filed two memoranda arguing that the regulation would allow bank holding companies to sponsor, create, promote and manage mutual funds in violation of sections 16 and 21 of the Glass-Steagall Act, as construed in *ICI v. Camp*, and therefore would not be an appropriate exercise of the Board's authority under section 4(c)(8) of the Bank Holding Company Act. In addition, appellant requested that a public hearing be held to consider the proposed amendment. This request was granted, and a hearing took place on November 12, 1971, with appellant and other interested parties participating.

On January 20, 1972, the Board entered an order amending Regulation Y, effective February 1, 1971, with only a slight modification in language from the proposal addressed at the hearing. The new regulation approved the following activity as "closely related" to banking:

> (5) Acting as investment or financial adviser, including (i) serving as the advisory company for a mortgage or a real estate investment trust; (ii) *serving as investment adviser, as defined in § 2(a)(20) of the Investment Company Act of 1940, to an investment company registered under that Act*; and (iii) furnishing economic or financial information;

*See* 37 Fed.Reg. 1463 (1971) (footnote omitted) (emphasis added).[4] By order of the Board of Governors on the same date, an interpretative ruling was issued, expressing the Board's view on the scope of the amended regulation in light of the restrictions imposed by the Glass-Steagall Act and the Supreme Court's decision in *ICI v. Camp*. *See* 37 Fed.Reg. 1464 (1971), *now codified at* 12 C.F.R. § 225.125 (1976). In addition to prohibiting several practices which might directly contravene the Glass-Steagall Act, this ruling established a distinction between "open-end" and "closed-end" investment companies.[5] The Board read *ICI v. Camp* only to bar bank holding companies from sponsoring, organizing, or controlling *open-end* investment companies (*i. e.*, mutual funds):

> (e) The Board recognizes that presently most mutual funds are organized, sponsored and managed by investment advisers with which they are affiliated and that their securities are distributed to the public by such affiliated investment ad-

---

**4.** Subsequent amendments of the regulation are not at issue here. Section 225.4(a)(5) currently covers the following activities:

> (5) Acting as investment or financial adviser to the extent of (i) serving as the advisory company for a mortgage or real estate investment trust; (ii) serving as investment adviser, as defined in section 2(a)(20) of the Investment Company Act of 1940, to an investment company registered under that Act; (iii) providing portfolio investment advice to any other person; (iv) furnishing general economic information and advice, general economic statistical forecasting services and industry studies, and (v) providing financial advice to State and local governments, such as with respect to the issuance of their securities;

12 C.F.R. § 225.4(a)(5) (1976) (footnotes omitted).

**5.** The Board distinguished "open-end" investment companies (mutual funds) and "closed-end" investment companies as follows:

> Briefly, a mutual fund is an investment company which, typically, is continuously engaged in the issuance of its shares and stands ready at any time to redeem the securities as to which it is the issuer; a closed-end investment company typically does not issue shares after its initial organization except at infrequent intervals and does not stand ready to redeem its shares.

12 C.F.R. § 225.125(c) (1976).

visers, or subsidiaries or affiliates thereof. However, the Board believes that (i) the Glass-Steagall provisions do not permit a bank holding company to perform all such functions, and (ii) it is not necessary for a bank holding company to perform all such functions in order to engage effectively in the described activity. (f)*In the Board's opinion, the Glass-Steagall Act provisions, as interpreted by the U. S. Supreme Court, forbid a bank holding company to sponsor, organize or control a mutual fund. However, the Board does not believe that such restrictions apply to closed-end investment companies as long as such companies are not primarily or frequently engaged in the issuance, sale and distribution of securities.* * *

12 C.F.R. § 225.125(e), (f) (1976) (emphasis supplied). Neither appellant nor any other interested party sought judicial review in a court of appeals of the amended regulation or the interpretative ruling within the thirty-day limit set forth in section 9 of the Bank Holding Company Act, *see* note 3 *supra*.

On December 12, 1973, appellant submitted to the Board a petition for reconsideration and rescission of section 225.-4(a)(5)(ii) of Regulation Y, the portion of the amended regulation allowing bank holding companies to serve as investment advisers to registered investment companies. In a memorandum attached to the petition, appellant questioned the Board's distinction between open-end and closed-end investment companies and reiterated its contention that the amended regulation permits activities forbidden by sections 16 and 21 of the Glass-Steagall Act. Appellant supported its memorandum with a factual appendix and affidavit documenting the allegedly unlawful activities that had in fact

been, and were being, pursued by bank holding companies under the regulation, primarily as advisers to investment companies purporting to be closed-end, and requested a hearing on the matter.

In a letter dated March 8, 1974, the Board, without hearing, responded in full to appellant's arguments and denied the petition. Appellant did not seek review of this decision in a court of appeals pursuant to section 9 of the Bank Holding Company Act. Instead, on May 8, 1974, two months after the denial of its petition for reconsideration and rescission, appellant brought suit in the district court, challenging the Board's original promulgation of the portion of the amended regulation, 12 C.F.R. § 225.4(a)(5)(ii), and the interpretative ruling, 12 C.F.R. § 225.125, allowing bank holding companies to serve as investment advisers to registered investment companies.

II

The District Court's dismissal for lack of jurisdiction was based on two major premises: first, that an appropriate court of appeals would have had jurisdiction under section 9 of the Bank Holding Company Act to review the amended regulation and interpretative ruling, if appellant had filed a timely petition in that court; and second, that the special statutory review procedure confers exclusive jurisdiction on the court of appeals in cases where it is applicable. We address each of these propositions in turn.

Although the jurisdictional law had not fully crystallized as of the time of the agency action at issue here, we are reasonably certain that the challenged regulations would have been reviewable in this court, assuming for the moment that ripeness considerations would not have been a bar.[6] In

---

6. To the extent that ripeness is a jurisdictional prerequisite, we assume that a court of appeals might have lacked "jurisdiction" under the Bank Holding Company Act to review the order promulgating the regulations. *See* Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals*, 88 Harv.L.Rev. 980, 990–91 (1975). *See also* Verkuil, *Judicial Review of Informal Rulemaking*,

60 Va.L.Rev. 185, 204 (1974). Moreover, if a challenge to the regulations did not become ripe within the statutory time limit for filing a petition in the court of appeals, one might legitimately question how review of the regulations could ever have been achieved. However, as we explain below, we think the appropriate remedy for an aggrieved party in such circumstances is to petition the agency for reconsider-

any event, we have no doubt that under the current law of this circuit the court of appeals has jurisdiction to review such regulations if a timely petition for review is filed.[7]

At one time, this circuit entertained the view that regulations promulgated after informal rulemaking were not reviewable in the courts of appeals under special jurisdictional statutes providing for review of "orders." The leading case expressing this position was *United Gas Pipe Line Co. v. FPC,* 86 U.S.App.D.C. 314, 181 F.2d 796, *cert. denied,* 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950), in which the court interpreted § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), to contemplate "review of a decision based on evidence presented in a quasi-judicial proceeding before the Commission," *id.* at 316, 181 F.2d at 798 (footnote omitted), and to "evidence Congressional recognition that an appellate court has no intelligible basis for decision unless a subordinate tribunal has made a record fully encompassing the issues," *id.* at 317, 181 F.2d at 799. *Accord, e. g., Arrow Airways, Inc. v. CAB,* 87 U.S.App.D.C. 71, 182 F.2d 705 (construing 49 U.S.C. § 646), *cert. denied,* 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950).

Nevertheless, in *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), the Supreme Court found jurisdiction in the court of appeals, under a statute addressed to "orders," to review an FCC order amending its multiple ownership regulations after informal rulemaking proceedings. *See also Frozen Food Express v. United States,* 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); *Columbia Broadcasting System, Inc. v. United States,*

316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). Although the Court did not expressly reject the type of reasoning advanced in *United Gas Pipe Line, Storer Broadcasting* illustrates a critical flaw in the analysis: a factual hearing in the district court is unnecessary if judicial review is based upon the administrative record. *See* Currie & Goodman, *Judicial Review of Federal Administrative Action: Quest for the Optimum Forum,* 75 Colum.L.Rev. 1, 45 (1975); Verkuil, *supra* note 6; Note, *supra* note 6, at 989–90. *But see* Nathanson, *Probing the Mind of the Administrator: Hearing Variations and Standards of Judicial Review Under the Administrative Procedure Act and Other Federal Statutes,* 75 Colum.L.Rev. 721, 754–56 & n. 172 (1975) (suggesting that APA contemplated resolution in district court of any factual issues arising in challenge to informal rulemaking). Moreover, if the administrative record forms the basis for review, requiring petitioners challenging regulations to go first to the district court results in unnecessary delay and expense, *see* Currie & Goodman, *supra* at 52–53; Verkuil, *supra,* and undesirable bifurcation of the reviewing function between the district courts and the courts of appeals, *see* L. Jaffe, Judicial Control of Administrative Action 358, 420–22 (1965).

Although some courts persist in reading special review statutes covering "orders" as not encompassing regulations, *see, e. g., PBW Stock Exch. v. SEC,* 485 F.2d 718 (3d Cir. 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974), the general approach taken by *United Gas Pipe Line* is no longer good law in this circuit. In *Environmental Defense Fund, Inc. v. Har-*

---

ation of the regulations—with review in the court of appeals under section 9—when sufficient information as to the actual utilization being made of the authority given by the regulations has been developed. *See* Section III *infra.*

**7.** In light of our resolution of this case, it is unnecessary to resolve with complete certainty the hypothetical question of whether we would have accepted review if a timely petition had been filed following promulgation of the regulation in 1972. Even if we thought the law at

that time would have required a denial of jurisdiction in the court of appeals, reinstatement of this suit in the District Court would not necessarily be the answer. To the contrary, we believe that the policies underlying section 9 of the Bank Holding Company Act can best be carried out in this case, regardless of what would have occurred in 1972, by requiring appellant to petition the Board for reconsideration of the regulations at issue, with subsequent review in this court of the Board's disposition of the petition. *See* Section IV *infra.*

*din,* 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970), Judge Bazelon, the author of the *United Gas Pipe Line* opinion, noted Professor Jaffe's criticism, *see* L. Jaffe *supra,* and, speaking for the court, declared that "[w]hatever its [the line of authority beginning with *United Gas Pipe Line's* ] continuing vitality," its rationale is not applicable where the agency's fact-finding expertise dictates a remand to the agency if further factual development is necessary, regardless of whether the reviewing court is a district court or a court of appeals. It was observed that in such circumstances "there seems to be no reason to inject another tribunal into process." *See id.* at 396–397 & n. 27, 428 F.2d at 1098–99 & n. 27.

*United Gas Pipe Line* was further undermined in *City of Chicago v. FPC,* 147 U.S. App.D.C. 312, 458 F.2d 731 (1971), *cert. denied,* 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972), in which the court determined that it had jurisdiction, under the same special review statute construed in *United Gas Pipe Line,* to review a regulation promulgated after formal evidentiary hearings before the Federal Power Commission. *Id.* at 321–322 & n. 45, 458 F.2d at 740–41 & n. 45. The court distinguished *United Gas Pipe Line* on the basis of the comprehensive evidentiary record presently before it, but questioned whether *United Gas Pipe Line* was still viable at all and noted that "there *is* a record available for review even when no evidentiary hearings have been held." *Id.* at 322 n. 45, 458 F.2d at 741 n. 45 (emphasis in original), *citing Automotive Parts & Accessories Ass'n, Inc. v. Boyd,* 132 U.S.App.D.C. 200, 206, 407 F.2d 330, 336 (1968). Finally, in *Mobil Oil Corp. v. FPC,* 152 U.S.App.D.C. 119, 469 F.2d 130 (1972), *cert. denied,* 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 159 (1973), and *Deutsche Lufthansa Aktiengesellschaft v. CAB,* 156 U.S.App.D.C. 191, 479 F.2d 912 (1973), this court found jurisdiction to review informal rulemaking under statutes providing for review of "orders" in the courts of appeals, and limited the *United Gas Pipe Line* result to situations in which review cannot take place on the basis of the administrative record. *See* 152 U.S.App.D.C. at 128–129,

469 F.2d at 139–40; 156 U.S.App.D.C. at 194–195, 479 F.2d at 915–16. As the court in *Deutsche Lufthansa* observed:

It is the availability of a record for review and not the holding of a quasi judicial hearing which is now the jurisdictional touchstone.

*Id.* at 195, 479 F.2d at 916.

Our treatment of cases brought under section 9 of the Bank Holding Company Act has followed the standard established by *Deutsche Lufthansa* and *Mobil Oil Corp.* In *National Association of Insurance Agents v. Board of Governors,* 160 U.S.App. D.C. 144, 489 F.2d 1268 (1974), we found unripe for review a challenge to an interpretative ruling construing a Board regulation which identified certain activities as "closely related" to banking. The interpretative ruling had been promulgated without notice or hearing, more than a year after the underlying regulation had been issued. Since the Board itself had characterized the interpretative ruling as "provisional and tentative in nature," the court concluded that the rule was exempt from the notice and hearing requirements of section 4(c)(8) of the Bank Holding Company Act. This circumstance in turn created a serious jurisdictional question: the court noted that section 9 "explicitly contemplates review of a record made before the Board," and there was no administrative record whatsoever supporting the interpretative ruling. *See id.* at 147, 489 F.2d at 1271. On the other hand, where a ripe regulation supported by an administrative record has been challenged, we have not hesitated to exercise jurisdiction. Thus, in *National Courier Association v. Board of Governors,* 170 U.S. App.D.C. 301, 516 F.2d 1229 (1975), we rejected the argument that section 9 does not encompass review of an amendment to a regulation, *see* Brief for Respondent Board of Governors at 46 n. 17, *National Courier Association, supra,* and reached the merits of an order, promulgated after informal rulemaking, amending Regulation Y and setting forth an interpretative ruling on the scope of the amendment.

The regulation and interpretative ruling at issue in the instant case are supported by an eight-volume record of informal rulemaking before the Board. The issue of statutory construction which appellants raise, if ripe, clearly could be resolved on the basis of the administrative record. The rules in question here, like the rules in National Courier, *supra,* could therefore have been challenged through a timely petition in this court under section 9 of the Bank Holding Company Act.

We believe this analysis embodies a proper construction of the word "order" in section 9. Indeed, we note that the Board styled its actions, in promulgating the regulations, as "orders." However, we do not think jurisdiction should turn, one way or the other, on the label which the Board chooses to employ. *Cf. Phillips v. Securities and Exchange Commission,* 171 F.2d 180, 182 (2d Cir. 1948). In our view, the purposes underlying section 9 will best be served if "order" is interpreted to mean any agency action capable of review on the basis of the administrative record.

We recognize that the word "order" has a narrower meaning in the phrase "by order or regulation" in section 4(c)(8) of the Act: namely, a Board decision following an adjudicatory hearing. We recognize also that the Administrative Procedure Act § 2(d), 5 U.S.C. § 551(6) (1970), defines an "order" as "the whole or a part of a final disposition . . . of an agency in a matter other than rulemaking. . . . " But as a comparison of these latter two definitions itself suggests, the word "order" has several frequently utilized meanings which vary in scope, and it is therefore not surprising that different sections of the same statute might use the word in different ways. *Cf. FTC v. Anheuser-Busch, Inc.,* 363 U.S. 536, 542, 549, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960), *on remand,* 289 F.2d 835, 840 (7th Cir. 1961) (interpreting "price discrimination" to have a narrower mean-

ing in § 2(a) than in § 2(b) of the Robinson-Patman Act). This is especially so given the fact that the phrase "by order or regulation" was enacted at a different time than the operative language in section 9. As both parties acknowledge, the legislative history of the 1970 amendments is completely silent with respect to the forum in which Board regulations would be reviewable. In light of the predominant case law construing jurisdictional statutes authorizing review of "orders" to include review of regulations, we must assume that Congress's failure to amend section 9 was either inadvertent or premised upon the belief that the developing case law made an enlarging amendment unnecessary.

## III

Appellant contends, quite correctly, that the precedents in this circuit establishing jurisdiction to review Board regulations, *e. g., National Courier Association, supra; Deutsche Lufthansa, supra; City of Chicago, supra,* do not explicitly focus on the question of whether the court of appeals' jurisdiction is exclusive. While this fact strengthens appellant's plea for special relief, *see* section IV *infra,* we are convinced that allowing aggrieved parties the option of choosing between review in the district court and review in the court of appeals would contravene the policies underlying section 9 of the Bank Holding Company Act. We hold, therefore, that in cases where section 9 confers jurisdiction on the court of appeals, jurisdiction in the district court is precluded.

In *Whitney National Bank v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), the Supreme Court held that a Board order under the Bank Holding Company Act, following an adjudicatory hearing, was reviewable only in the court of appeals, and dismissed a suit brought in the district court.[8] The Court reasoned as fol-

---

**8.** The Federal Reserve Board had approved a bank holding company's plan to organize a new national bank. To begin operations, the new bank needed a certificate of authority from the

Comptroller of the Currency. However, three state banks brought suit in the district court to enjoin the Comptroller from issuing the certificate. Within the same month, two of these

lows: first, in passing the Bank Holding Company Act, Congress expressly rejected a proposal for *de novo* review of Board decisions in the district courts; second, "where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive"; and third, allowing the district court to exercise concurrent jurisdiction would result in "unnecessary duplication and conflicting litigation," as well as the confusion inherent in the prospect of different records and standards of review. *See id.* at 420–422, 85 S.Ct. at 557.

These reasons for exclusive jurisdiction apply with equal force to review of Board regulations. The proposal for *de novo* review of Board decisions in the district courts was embodied in a bill, H.R. 6227, 84th Cong., 1st Sess. (1955), which specifically encompassed any "regulation" or "rule," as well as any "order," "adjudication," "determination," or "other action." *See* 101 Cong.Rec. 8187 (1955). This version of the bill was rejected by the full Congress, after passing the House. *Compare* Act of May 9, 1956, c. 240, § 9, 70 Stat. 138, *with* 101 Cong.Rec. 8187, 8194 (1955). Moreover, the standard by which jurisdiction in the court of appeals is defined—whether review is proper on the basis of the administrative record—ensures that regulations will be reviewable in that court if, and only if, the agency's expertise may properly be relied upon to develop any factual issues. By hypothesis, a factual hearing in the district court would be unnecessary in such circumstances. Allowing the district courts to exercise concurrent jurisdiction could therefore lead only to unnecessary delay, and might result in improper consideration of factors outside the administrative record,

see, *e. g., Camp v. Pitts,* 411 U.S. 138, 142–143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). *See* L. Jaffe, *supra* at 422; Currie & Goodman, *supra* at 52; Verkuil, *supra* at 200, 204.

Appellant places heavy reliance on *R. A. Holman & Co. v. SEC,* 112 U.S.App.D.C. 43, 299 F.2d 127, *cert. denied,* 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962), to demonstrate the proposition that concurrent district court jurisdiction over agency regulations is not foreclosed by review statutes establishing jurisdiction over "orders" in the court of appeals. In *R. A. Holman,* this court found jurisdiction in the district court to review an SEC rule controlling eligibility to underwrite certain types of securities. However, we expressly indicated that the court of appeals would not have had jurisdiction upon direct review. *See id.* at 46, 299 F.2d at 130. Neither that case, nor any of the other cases cited by appellant, *e. g., Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Natural Resources Defense Council, Inc. v. Train,* 171 U.S.App.D.C. 151, 519 F.2d 287 (1975); *O'Donnell v. Shaffer,* 160 U.S.App. D.C. 266, 491 F.2d 59 (1974); *National Petroleum Refiners Association v. FTC,* 157 U.S.App.D.C. 83, 482 F.2d 672 (1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974), holds that a particular challenge to an agency action could have been brought in either the court of appeals or the district court.

Indeed, an impressive line of authority supports the contrary proposition that, even where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute. *See, e. g., Macauley v. Waterman S.S.*

---

banks filed a timely petition in the court of appeals under section 9 of the Bank Holding Company Act, seeking direct review of the Board's actions. Several months later, the district court entered a permanent injunction against the Comptroller in the original suit brought by the state banks. Without acting upon the petition for direct review of the Board's action, the court of appeals affirmed the district court's judgment. Upon review of

the suit started in the district court, the Supreme Court held that the issues raised by the state banks were cognizable only by the Board, with exclusive jurisdiction in the court of appeals to review the Board's determination. The Court took notice, however, of the petition for direct review pending in the court of appeals, and invited the parties to assert their claims through that medium.

*Corp.,* 327 U.S. 540, 543–545, 66 S.Ct. 712, 90 L.Ed. 839 (1946); *E. I. duPont de Nemours & Co. v. Train,* 528 F.2d 1136, 1137 & n. 1, 1142 (4th Cir. 1975), *cert. granted,* 425 U.S. 933, 96 S.Ct. 1662, 48 L.Ed.2d 174 (1976); *UMC Industries, Inc. v. Seaborg,* 439 F.2d 953, 955 (9th Cir. 1971); *United States v. Southern Ry. Co.,* 380 F.2d 49, 53–54 (4th Cir. 1967); Note, *supra* note 6, at 982–983 & n. 17. The Administrative Procedure Act itself provides that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute," except where such review would be inadequate. APA § 10(b), 5 U.S.C. § 703 (1970); *see* Note, *supra* note 6, at 983.

■ Appellant also argues that closing the district courts to challenges against regulations would work an undue burden on aggrieved parties, and therefore Congress could not have intended section 9 to establish exclusive jurisdiction over regulations in the courts of appeals. This is a substantial argument, since section 9 requires that petitions be filed within 30 days after the agency action being questioned, *see* note 3 *supra,* and 30 days provide only a very short time in which a potential complainant can ascertain the precise use which will be made of the authority contained in a regulation. The 30-day limit serves an important purpose, however: it brings some measure of finality to Board determinations, thereby conserving administrative resources and protecting the reliance interests of holding companies whose applications to engage in non-banking activities have been approved. *See* S.Rep.No.1095, pt. 2, 84th Cong., 2d Sess. 5 (1956); S.Rep.No.1179, 87th Cong., 2d Sess. 10 (1966). Moreover, as we hope to make clear, the problems raised by the 30-day limit do not require that litigants be given the option of bringing challenges to regulations in the district courts.

■ Litigants who file suit in the district court, when exclusive jurisdiction lies in the court of appeals, may not discover their mistake until after the 30-day limit has expired and may therefore be deprived of any opportunity to challenge an order promulgating improper regulations. But, at least from now on, this situation need never arise. If any doubt as to the proper forum exists, careful counsel should file suit in both the court of appeals and the district court or, since there would be no time bar to a proper action in the district court, bring suit only in the court of appeals. This suggestion is hardly unprecedented; the plaintiffs in *Whitney National Bank v. Bank of New Orleans, supra,* were able to protect their rights by following the double-filing procedure.

■ Furthermore, from the standpoint of judicial efficiency, the court of appeals should have the first opportunity to pass on the jurisdictional question. Under the standard we have discussed, the vast majority—if not all—of the Board's actions pursuant to section 4(c)(8) of the Bank Holding Company Act will be reviewable only in the courts of appeals, if they are sufficiently final for judicial review anywhere.[9] And, if a case should arise in which the court of appeals determines that review cannot take place on the basis of the administrative record, it can deny jurisdiction and, in effect, remand the case to the district court. *Cf.* Administrative Orders Review Act, 28 U.S.C. § 2347(b)(3) (1970) (authorizing the court of appeals to transfer proceedings to a district court when a hearing before the agency is not required by law and a genuine issue of material fact is presented), *discussed in* Note, *supra* note 6, at 999 & n. 119.

■ Where the right to petition for review within 30 days after promulgation

---

**9.** *See, e. g., Mobil Oil Corp. v. FPC, supra,* 152 U.S.App.D.C. at 129, 469 F.2d at 140. Even if factual issues have not been adequately resolved by the record presented to the court, review on the basis of the administrative record might still be proper. Rather than denying jurisdiction, the court of appeals can remand the case to the agency for further factual development. *See, e. g., Portland Cement Ass'n v. Ruckelshaus,* 158 U.S.App.D.C. 308, 486 F.2d 375 (1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); Note, *supra* note 6, at 990. *See generally* Currie & Goodman, *supra* at 49–50 (discussing various means for resolving factual issues without a hearing in the district court).

of a regulation does not provide an adequate remedy, alternative means may be utilized to bring a claim before this court. *Cf.* Administrative Procedure Act § 10(b), 5 U.S.C. § 703 (1970). For example, if a regulation does not become ripe for review within 30 days, an aggrieved party can wait until sufficient information as to the regulation's concrete effect is available, petition the Board for reconsideration of the regulation on the basis of the new information, and seek review of the Board's decision in this court. Administrative Procedure Act § 4(d), 5 U.S.C. § 553(e) (1970); *see, e. g., National Organization for Reform of Marijuana Laws v. Ingersoll,* 162 U.S.App.D.C. 67, 497 F.2d 654 (1974); *Gage v. AEC,* 156 U.S.App.D.C. 231, 239 & n. 27, 479 F.2d 1214, 1222 & n. 27 (1973); *Kesinger v. Universal Airlines, Inc.,* 474 F.2d 1127, 1132 (6th Cir. 1973); *Functional Music, Inc. v. FCC,* 107 U.S.App.D.C. 34, 36–37 n. 6, 274 F.2d 543, 545–46 n. 6 (1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 81 (1959); Currie & Goodman, *supra* at 48. *See also Oljato Chapter of Navajo Tribe v. Train,* 169 U.S.App.D.C. 195, 515 F.2d 654, 665–68 (1975). The administrative record for review would include the information and affidavits submitted to the agency by the aggrieved party, the record of any hearings on the matter, and the Board's response (which might incorporate by reference the record of the original rulemaking proceedings). *See generally Oljato Chapter of Navajo Tribe v. Train, supra.* The general standard governing review would, of course, be whether the Board's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law." APA § 10(e), 5 U.S.C. § 706(2)(A) (1970); *see, e. g., Nader v. Nuclear Regulatory Commission,* 168 U.S.App.D.C. 255, 261, 513 F.2d 1045, 1051 (1975). This procedure is far superior to a delayed challenge to the regulation in a district court: in addition to avoiding an unnecessary layer of judicial review and ensuring some degree of finality with respect to claims which should have been raised within 30 days after initial promulgation of the regulation, the agency with expertise on the matters in issue is afforded the first opportunity to evaluate the implications of the new information.[10]

Even if a regulation might have been technically ripe for review within 30 days after its promulgation, new information might justify Board reconsideration of the regulation. The procedure outlined above should accommodate these situations as well.[11] A more delicate problem would arise if an aggrieved party wants to challenge a regulation after the 30-day limit has expired, without presenting any information which was not considered by the Board in the original rulemaking proceeding. If the aggrieved party has a legitimate excuse for not having brought his challenge within 30 days, then the right to petition for immediate review should not be considered to have been an adequate remedy. In such circumstances, the aggrieved party should not be estopped from asserting the merits of his claim in a court of appeals upon a refusal by the Board to reconsider the challenged regulation. The record for review in such a case might consist of little more than the Board's denial of the petition for reconsideration supported by the record

---

10. When an aggrieved party wishes only to challenge a regulation as applied to a particular bank holding company's activities, and the claim would not have been ripe for review within 30 days after promulgation of the regulation, the appropriate remedy would be to petition the Board for denial of that company's application to engage in such activities, with review in the court of appeals. *See* 12 C.F.R. § 225.4(b) (1976); *National Ass'n of Ins. Agents v. Board of Governors, supra,* 160 U.S. App.D.C. at 145–146, 489 F.2d at 1270–71. *See also Alabama Ass'n of Ins. Agents v. Board of Governors,* 533 F.2d 224, 244–45 (5th Cir.

1976); *Oljato Chapter of Navajo Tribe v. Train, supra,* 169 U.S.App.D.C. at 200 n. 6, 515 F.2d at 659 n. 6. If the claim arises after the particular company's application has already been approved, the aggrieved party could petition the Board for reconsideration of that application.

11. If the new information involves only the activities of a particular bank holding company, a more appropriate avenue for review might be a petition challenging the Board adjudication in which the regulation is applied to that company. *See* note 10 *supra.*

of the original rulemaking proceedings, but the 30-day limit established by section 9 technically could be met, since the petition for review would be attacking the order denying reconsideration of the regulation, not the order by which the regulation was promulgated in the first instance.[12] Although this approach may appear somewhat artificial, it ensures an adequate remedy for aggrieved parties, while giving the agency a chance to correct any actions which, upon further reflection, appear to have been erroneous. At the same time, the court must be strict in determining what constitutes a "legitimate" excuse; otherwise, the policy of finality underlying the 30-day limit will not be achieved.[13]

## IV

■ Appellant alleges that, at the time the regulations in issue were promulgated, it was not clear whether they would operate in such a manner as to violate the Glass-Steagall Act. Although appellant repeatedly raised the spectre of Glass-Steagall violations both prior to and during the public hearing on the regulations, there is a certain plausibility to the contention that the actual effect of the rules, especially with respect to closed-end investment companies,

could not be ascertained with any certainty at the outset. Appellant's appropriate remedy in that event was to petition the Board for reconsideration of the regulations when sufficient information was available.. Of course, this is exactly what appellant did. But, rather than filing a petition in this court within 30 days after the Board's denial of its petition for reconsideration, appellant waited two months and filed in the District Court.

■ Nevertheless, under the special circumstances of this case, we do not think appellant should be barred from asserting its claim in this court, if the Board should deny a *second* petition for reconsideration of the regulations.[14] In the future, we would expect competent counsel to file petitions in both courts, or at least in the court of appeals, if there is any doubt as to the appropriate forum for judicial review. However, since the law was somewhat unclear at the time appellant filed suit, and the procedures for dealing with such uncertainty had not been set forth by this court, we are not inclined to view as an adequate remedy in this instance the right to have sought review following the Board's denial of the first petition for reconsideration. Even if the existence of jurisdiction in this

12. This method of analysis is equally applicable to situations in which an aggrieved party files a second petition for reconsideration of a regulation, without citing any information which was not brought forth in a prior petition for reconsideration denied by the Board. If the second petition were denied on the basis of the Board's prior decision, the record for review would consist merely of the second order supported by the record of the proceedings surrounding the first petition. Nevertheless, if the litigant has a legitimate excuse for having failed to challenge the first denial, he should not be estopped from raising the merits of his claim upon review of the second denial. The standard for review would, of course, be the same as the one described above for denials of an initial petition for reconsideration. As will become apparent, *see* section IV *infra,* we think the instant case qualifies for such treatment.

13. Where an aggrieved party has a valid excuse for failing to challenge the initial order promulgating a regulation, the regulation may be open to attack upon review of a Board adjudication

which applies the regulation to a particular holding company's application to engage in non-banking activities. *See* 12 C.F.R. § 225.-4(b) (1976); *Alabama Ass'n of Ins. Agents v. Board of Governors,* 533 F.2d 224, 235–236 (5th Cir. 1976); note 10 *supra.* However, absent a convincing justification, the litigant should be bound by the regulation. A contrary rule would thwart the principle of finality underlying section 9.

14. At oral argument, appellant's counsel stated that it would be impracticable to raise his client's claim in the context of a Board adjudication on an individual holding company's application to engage in non-banking activities, *see* note 13 *supra,* since it would be impossible to tell in advance whether that company's activities under the regulation would violate the Glass-Steagall Act. In any event, if appellant wants the regulations themselves amended or rescinded, the more efficient procedure is to attack the regulations on their face, rather than as applied.

court to review regulations should have been clear in 1974, following the decision in *Deutsche Lufthansa,* we had not expressly declared that such jurisdiction would be exclusive. And the Government itself argued to this court, as late as *1975,* that the court of appeals lacked jurisdiction to review Board regulations issued under the Bank Holding Company Act. *See* Brief for Respondent Board of Governors at 46 n. 17, *National Courier Ass'n v. Board of Governors,* 170 U.S.App.D.C. 301, 516 F.2d 1229 (1975). If the law was uncertain enough that the agency charged with administration of the Act could argue in good faith that its regulations could not be reviewed in this court, we infer that appellant has a legitimate excuse for having chosen the wrong forum.[15]

Thus, denial of a second petition for reconsideration should be reviewable in the court of appeals even if appellant presents the same information to the Board which was contained in the first petition. However, inasmuch as approximately three years have passed since the first petition was filed, appellant should take care that any relevant information which has developed in the interim is included in a second petition for reconsideration, if one is filed. The Board, as well as the reviewing court, should have the benefit of all materials which would facilitate decision of the issues presented.

The judgment of the District Court dismissing this case for lack of subject matter jurisdiction is accordingly

*Affirmed*

15. Of course, when the regulations challenged by appellant were promulgated, the jurisdictional law was even more unclear than it was at the time of the Board's denial of the petition for reconsideration, since *Mobil Oil Corp.* and *Deutsche Lufthansa* had not yet been decided. Therefore, even assuming that the regulations were fully ripe for review immediately after their promulgation, appellant's failure to seek judicial review in 1972 clearly should not be any more of a bar to further relief than appellant's choice of the wrong forum in 1974.

1. The Conference approved the recommendation made in a report by Professor David Cur-

LEVENTHAL, Circuit Judge, concurring:

I entirely concur in Judge McGowan's excellent opinion for the court.

I take advantage of the freedom of a concurring opinion to express the hope that the core problem will be dealt with in the reasonable future by the enactment of a general statute permitting transfer between district courts and courts of appeals in the interest of justice, including specifically but not exclusively those instances when complaints are filed in what later proves to be the "wrong" court.

The Administrative Conference of the United States, by resolution adopted December 10, 1976, also entitled Judicial Review Under the Clean Air Act and Federal Water Pollution Control Act, approved a transfer recommendation, as follows:

To prevent unfairness from a litigant's choice of the wrong court, Congress should provide for transfer between district courts and courts of appeals of petitions and complaints filed under the Acts. The Court of Claims transfer provision provides a good model.[1]

Reprinted at 41 Fed.Reg. 56767 (Dec. 30, 1976).

The ambiguities that now abound, and have sometimes led to what has been described as "jurisdictional badminton,"[2] are not edifying. Realistically, some ambiguities are likely to persist. The only lawyer-like remedy today, as Judge McGowan points out, is double filing. That is hardly a model. Today's opinion crafts a solution that avoids hardship in the case at hand. A

rie of University of Chicago Law School. The "model" referred to is 28 U.S.C. § 1506:

If a case within the exclusive jurisdiction of the district courts is filed in the Court of Claims, the Court of Claims shall, if it be in the interest of justice, transfer such case to any district court in which it could have been brought at the time such case was filed, where the case shall proceed as if it had been filed in the district court on the date it was filed in the Court of Claims.

2. *Natural Resources Defense Council, Inc. v. EPA,* 168 U.S.App.D.C. 111, 121, 512 F.2d 1351, 1361 (1975) (dissenting in part).

more direct and sweeping approach is eminently desirable and eminently timely.